# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2081

_____

Annie Garrett, on behalf of Myron     *
Moore,     *
    *
      Plaintiff-Appellant,     *    Appeal from the United States
    *    District Court for the
      v.     *    Eastern District of Arkansas.
    *
Jo Anne B. Barnhart, Commissioner,     *
Social Security Administration,     *
    *
      Defendant-Appellee.     *
    *

_____

Submitted: November 19, 2003
Filed: May 4, 2004

_____

Before MELLOY, RICHARD S. ARNOLD, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Annie Garrett, on behalf of her minor child, Myron Moore, appeals a judgment affirming the denial of her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Because the administrative law judge ("ALJ") failed to properly assess the impact of Myron's repeated suicide attempts when considering Myron's personal functioning, we reverse and remand.

## I. BACKGROUND

At the time of Myron's SSI hearing, he was fifteen years old. When his mother, Annie, filed an SSI application on his behalf, Myron was thirteen years old and had been diagnosed with a cognitive disorder, recurrent major depression, bipolar disorder, and attention deficit hyperactivity disorder. By the time of his hearing, Myron had attempted suicide four times. Three of these attempts occurred within a nine-month time span and resulted in extended hospital stays. Myron has undergone behavioral and psychological treatment, and he takes three medications daily to help control his depression and attention deficit hyperactivity disorder.

Myron was first diagnosed and treated for depression and for attention deficit hyperactivity disorder in April of 1998. Since these diagnoses, Myron has undergone both psychotherapy and pharmacotherapy to treat these illnesses. Despite treatment, however, Myron continues to have episodes of severe bouts of depression, which sometimes pose serious threats to his physical safety and well-being. In December of 1998, Myron was hospitalized for two months after threatening to commit suicide. According to hospital records, Myron threatened to stab himself because he felt hopeless. At the time of this suicide attempt, Myron was taking two anti-depressant medications. In March of 1999, he was hospitalized for one month after overdosing on four kinds of prescription medications. His discharge papers after this suicide attempt note that Myron had not been compliant with his medication regimen, but contrary to the Commissioner's assertion, the papers do not attribute the suicide attempt to Myron's non-compliance. In August of 1999, Myron was hospitalized a third time after playing Russian Roulette with a gun.

Academically, Myron struggles but is of average intelligence and performs competently at school. He has been held back one grade, and he attends resource classes in reading and science. He has taken two IQ exams, which resulted in vastly different full scale scores of 69 in 1997 and 85 in 1998. Myron's difficulties at

school appear to stem mainly from his psychological and behavioral problems, rather than from any intellectual shortcomings. He has frequent, unpredictable temper outbursts, despite having completed anger management therapy. These outbursts are oftentimes violent and have resulted in serious disciplinary actions at school. He has been placed in detention and suspended several times for fighting, threatening a teacher, and using vulgar language. One such suspension occurred after Myron assaulted a teacher.

In 1997, a school psychology specialist completed a psychoeducational evaluation on Myron. As part of this evaluation, she formulated a Burks Behavior Rating Scale profile of him. This profile indicated significant weaknesses in academics, impulse control, sense of identity, anger control, sense of persecution, aggressiveness, and resistance. The following year, in 1998, Myron's math teacher completed a school questionnaire, which mirrored much of the specialist's findings. The math teacher reported that Myron responded poorly to change, possessed low self-confidence, and was immature. He also noted that Myron had frequent temper outbursts, was easily intimidated, and was disobedient. The math teacher did not believe that Myron had problems communicating or functioning socially.

At the time of the hearing on Myron's SSI application, Myron practiced basketball with his school's team to prepare for team tryouts. His mother reported that he prefers to socialize with children who are significantly younger than himself, that he acts like a five-year old child despite being a teenager, and that, when he is experiencing a bout of depression, he isolates himself. In spite of these limitations, Myron cares for his two younger siblings, has some friends at school, practices a team sport, briefly held a job, performs household chores, and enjoys shooting hoops with neighborhood friends.

## II. DISCUSSION

### A. Standard of Review

We must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g) (2001); Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000); Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995). Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the ALJ's decision. Hunt v. Massanari, 250 F.3d 622, 623 (8th Cir. 2001). It "is less than a preponderance [of evidence], but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). "[W]e may not substitute our judgment for that of the ALJ." Metz, 49 F.3d at 376. "Our task is to consider whether the Commissioner's decision is supported by substantial evidence in the record as a whole." Harris v. Barnhart, 356 F.3d 926, 928 (8th Cir. 2004). In undertaking this task, "[w]e review de novo a district court decision affirming a denial of social security benefits." Strongson v. Barnhart, 361 F.3d 1066, 1069 (8th Cir. 2004).

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193 §§ 211 to 212, 110 Stat. 2105, 2188-94 (1996). Under this Act, a child is considered disabled and entitled to SSI benefits if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security Administration published interim final rules interpreting the childhood disability provisions of the 1996 statute in February of 1997. These interim rules were in force until January 2, 2001 when the final rules went into effect.

See 65 Fed. Reg. 54747 (Sept. 11, 2000). The ALJ issued his decision in this case on April 27, 2000 and, accordingly, applied the interim rules.

The Social Security Appeals Council declined review on August 1, 2001. When it declined review, the ALJ's decision became the Commissioner's final decision. We apply the rules that were in effect at the time the Commissioner's decision became final. See 65 Fed. Reg. 54751 ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Consequently, because the new final rules were in effect at the time the Commissioner's decision became final on August 1, 2001, we apply these final rules. See id.

### B. Analytical Framework

A three-step sequential analysis is applied to determine whether a child is eligible for SSI benefits on the basis of disability. Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 854 (8th Cir. 2003). First, the minor child cannot be gainfully employed. Id. If the child meets this threshold requirement and is not engaged in substantial gainful activity, the ALJ must next consider whether the child's impairment or combination of impairments is "severe." E.g, id. If so, the ALJ determines whether the child's impairments meet, medically equal, or functionally equal a listed impairment set out in Appendix 1 of 20 C.F.R. Part 404, Subpart P. Id. If they do, and if the twelve-month durational requirement is met, disability is established. See id.

### C. Procedural History

The ALJ found that Myron had not engaged in substantial gainful activity and further found Myron's impairments to be severe. However, the ALJ found that

Myron was not disabled at step three of the sequential evaluation. That is, the ALJ found that Myron's limitations did not meet a listed impairment, nor did his impairment or combination of impairments medically equal in severity the criteria for a listed impairment. Accordingly, the ALJ considered whether Myron had an impairment that was functionally equivalent in severity to a listed impairment. The ALJ ultimately concluded that Myron did not have such an impairment and denied benefits.

The Social Security Appeals Council declined review of Myron's case and upheld the ALJ's determination. Myron's mother sought judicial review. The district court concluded that the Commissioner's decision to deny benefits was supported by substantial evidence on the record as a whole. On appeal to our court, the appellant first argues that Myron's major depressive syndrome indeed meets the requirements for a listed impairment. Second, the appellant argues that Myron's limitations are the functional equivalent of a listed impairment because he has marked limitations in two areas of functioning—social and personal development. The appellant particularly objects to the ALJ's cursory consideration of Myron's suicide attempts in the personal functioning domain. She contends that, if the ALJ had properly considered the impact of Myron's suicidal tendencies on his ability to care for himself, the ALJ would have found marked impairments in this area.

## D. Review of the Commissioner's Decision

Because the appellant does not contest the ALJ's finding regarding substantial gainful activity, we bypass the first step. Under the second step, we agree that Myron's impairments of attention deficit hyperactivity disorder, depression, and a cognitive disorder are severe. We turn, therefore, to the issues raised on appeal concerning the third step of the child disability test, namely, whether Myron's impairments meet or medically equal a listed impairment and, alternatively, whether they are functionally equivalent to a listed impairment.

1.    Medically equal to a listed impairment

First, Myron contends that his impairments medically equal a listed impairment and that substantial evidence does not exist to support the ALJ's conclusion to the contrary. Under the third step of the sequential analysis, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a) (2003).[1] The ALJ's decision reflects his recognition that Myron suffers from "attention deficit hyperactivity disorder, depression and a cognitive disorder." (Admin. Tr. at 17.) However, after considering the listings for mental problems at 112.02 through 112.12, the ALJ found that Myron's impairments do not meet or equal in severity the criteria for a listed impairment.

Myron submits that his impairments meet or medically equal in severity the mood disorder listing, 112.04. To meet or medically equal the mood disorder listing, a claimant must satisfy two separate prongs. Id. Part 404, Subpt. P, App. 1, § 112.04. The first prong demands "[m]edically documented persistence, either continuous or intermittent," of a major depressive syndrome that is characterized by at least five of the following ten symptoms:

    a.    Depressed or irritable mood; or
    b.    Markedly diminished interest or pleasure in almost all activities; or
    c.    Appetite or weight increase or decrease, or failure to make expected weight gains; or
    d.    Sleep disturbance; or
    e.    Psychomotor agitation or retardation; or
    f.    Fatigue or loss of energy; or
    g.    Feelings of worthlessness or guilt; or
    h.    Difficulty thinking or concentrating; or

---

[1]Unless otherwise indicated, all citations to the Code of Federal Regulations are to the 2003 edition.

i.      Suicidal thoughts or acts; or
j.      Hallucinations, delusions, or paranoid thinking[.]

Id. Pt. 404, Subpt. P, App. 1, § 112.04(a)(1)(a)-(j) (hereinafter sometimes referred to as "the A criteria"). The second prong, pertinent to a child Myron's age, requires a showing of marked impairment in at least two of four specified areas of functioning, which we will discuss in greater detail later.

Myron argues that his impairments meet the A criteria for listing 112.04 because he has been diagnosed with both major depression and bipolar disorder, which have persisted for several years. He contends that the medical evidence shows depressed mood, suicidal thoughts and acts, decreased sleep, increased anhedonia, decreased energy, decreased concentration, and mild psychomotor retardation. The ALJ did not explain his reasoning underlying his finding that Myron's impairments did not meet nor medically equal a listed impairment, thus making judicial review difficult. He stated, however, that he considered listed impairments related to mental problems at listings 112.02 through 112.12. His failure to elaborate is not reversible error so long as substantial evidence in the record supports his conclusion. See Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001) (holding a failure to explain why the claimant did not meet the listing for rheumatoid arthritis was not error); Briggs v. Callahan, 139 F.3d 606, 609 (8th Cir. 1998) (stating that "[a]lthough the ALJ did not specifically discuss [the] condition in the context of listing 112.05(D)," the record supported the conclusion).

On review to the district court, the court rejected Myron's contention that he met listing 112.04. The court noted that some of Myron's medical records supported his argument that he experienced at least five of the ten A criteria symptoms. Still, the court determined that the documentation did not support the medically documented persistence requirement and that, in any event, the second prong of listing 112.04 was not satisfied.

In the application for SSI benefits, Myron's mother indicated an onset date of April 1998, which is the date on which Myron's treating psychiatrist, Dr. Millicent Dudley, first diagnosed Myron as suffering from major depressive disorder and attention deficit hyperactivity disorder. Myron saw Dr. Dudley one to two times per month during the time period of April 7, 1998 through June 2, 1999—more than ten visits in total. All of Dr. Dudley's progress notes were in evidence at Myron's hearing. Moreover, Myron submitted the treatment notes of the attending psychiatrists and counselors from each of his several hospital and treatment center admissions. None of any doctors' or therapists' notes indicates that Myron's symptoms had subsided or had been cured.

Although we apply a de novo standard of review to the district court's decision affirming the ALJ's decision, Depover v. Barnhart, 349 F.3d 563, 565 (8th Cir. 2003), we address the medically documented persistence of Myron's impairments primarily because the Commissioner contends on appeal that the lack of evidence in this regard supports denial of benefits. However, we disagree that substantial evidence in the record supports a finding that Myron's claim of disability fails for lack of medically documented persistence. Not only has Myron adduced substantial evidence that he satisfies the A criteria of listing 112.04(A)(1), major depressive syndrome, our thorough review of Myron's medical and scholastic records convinces us that the record does not contain relevant evidence that reasonable minds might consider as adequate to support a conclusion that Myron's symptoms were *not* either continuous or intermittent. Medication at times adequately controls Myron's symptoms, but the record shows that the symptoms regularly recur.

For example, one discharge summary notes:

The patient has a history of acting out in a self-destructive fashion with a history of overdose in the past. The patient was found by his grandmother, playing Russian Roulette with a gun, and was admitted to

[St. Bernard's Behavioral Health] due to imminent risk for harm to self. The patient has been treated with a combination of Depakote, Zoloft and Trazodone in an outpatient setting, and this appears not to have had an effect as yet.

It should be noted that present neurovegetative signs and symptoms have been reported off and on for the past 3 years. Most notable are decreased sleep, with initial insomnia, not restful, increased anhedonia, with no ruminations reported, decreased energy, decreased concentration, no change in appetite, mild psychomotor retardation and history of suicidal behaviors and actions.

(Admin. Tr. at 276) (Discharge Summary, St. Bernard's Behavioral Health, dated Sept. 17, 1999.) In short, substantial evidence does not support a finding that Myron has not satisfied the A criteria of meeting or medically equaling listing 112.04.

2.      Marked Impairment

As noted above, the second prong of the medical equivalency test of listing 112.04 requires marked impairment in two of four functional categories. These categories are:

        a.      Marked impairment in age-appropriate cognitive/ communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests . . . ; or

        b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

-10-

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2), cross-referenced by id. Pt. 404, Subpt. P, App. 1, § 112.04(B).

Similarly, to be found to be disabled by virtue of suffering from a "functionally equal" impairment, a claimant Myron's age must show marked impairment in at least two functional categories.[2] Prior to the effective date of the final rules, "personal functioning" and "social functioning" appeared in both the meet or medically equal provisions and in the functionally equivalent provisions of the interim final rules. Compare id. § 416.926a(c)(4)(i)-(iii), (v)-(vi) (2000) (functional equivalence domains for children age three to age eighteen under interim rules were: cognition/communication, motor, social, personal, and concentration, persistence, or pace), with id. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2)(a)-(c) (meet or medically equal domains included: cognitive/communicative function, social functioning, personal functioning). However, the final rules, which apply in this appeal, see supra, extensively reorganized and revised 20 C.F.R. § 416.926a, the section that governs the functional equivalence of children. 65 Fed. Reg. 54,752 (Sept. 11, 2000). Under the final rules, the broad areas of functioning pertaining to the "functionally equivalent" route of establishing disability are: (1) acquiring and using information;

---

[2]A child may be found functionally equivalent to a listed impairment based upon an extreme limitation in one area of functioning, as well. 20 C.F.R. § 416.926a(a). Myron, however, does not claim that he suffers from an extreme limitation in any broad area of functioning. Therefore, for purposes of this case, we confine our analysis to whether Myron's impairments cause marked limitations.

(2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(g)-(l) (2003).

Our ability to review the Commissioner's final decision regarding functional equivalency is severely curtailed by the fact that the ALJ's decision was made under the interim rules, and this difficulty is compounded by the Social Security Appeals Council's cursory review of Myron's case.  The Social Security Appeals Council merely stated that it had considered the final rules but found that the new final rules did not provide a basis to change the ALJ's decision.[3]  (Admin. Tr. at 7.)

The parties in this case did not address the personal and social functioning domains with regard to the changes that the final rules made in § 416.926a.  Even though these domains no longer appear in both § 416.926a and in the "meet or medically equal" provisions of the final rules, for purposes of this appeal we will treat the final rules' "interacting and relating with others," 20 C.F.R. § 416.926a(i), and "caring for yourself," id. § 416.926a(k), functional domains as analogous to the "social" and "personal" functioning domains, respectively.

Under the final rules as expressed in § 416.926a, a child will be found to have a "marked" limitation when the impairment interferes seriously with the child's ability to "independently initiate, sustain, or complete activities."  Id. § 416.926a(e)(2). Further, "'[m]arked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'"  Id.  For purposes of comparison, a child will be found to have an "extreme" limitation when the impairment "interferes very

_____

[3]The appellant does not submit that the ALJ's application of the interim rules and the Appeals Council's summary affirmance deprives us of the opportunity to conduct a meaningful judicial review of the Commissioner's decision.  Indeed, neither party even cites to the new rules nor argues that they would impact the result in this case.

seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3).

Similarly, the regulations pertaining to meeting or medically equaling a listed impairment define "marked" as "more than moderate but less than extreme." Id. Pt. 404, Subpt. P., App.1 § 112.00(C). The rules provide: "[a] marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." Id.

We agree that substantial evidence in the record supports the ALJ's determination that Myron's impairments do not result in marked limitations in the areas of cognition/communication, motor, and concentration, persistence, or pace. Myron does not challenge these findings on appeal. Instead, he argues that he meets listing 112.04, or at least his limitations are functionally equivalent to a listed impairment, because he has marked impairment in social functioning and in personal functioning. The ALJ concluded that Myron had marked limitations of functioning in only one domain—social.

The principal issue on appeal is whether the ALJ adequately considered Myron's suicide attempts in the domain of personal functioning and, consequently, whether substantial evidence supports his finding that Myron had only slight limitations in this area. According to the appellant, the ALJ's analysis in finding that Myron only had slight limitation of functioning in personal development demonstrates that the ALJ failed to adequately consider the gravity and impact of Myron's suicide attempts on his ability to care for himself.

"Personal functioning in adolescents pertains to self-care." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C)(4)(a). The focus of the personal functioning domain

in adolescent children is on "the adolescent's ability to take care of his or her own personal needs, health, and safety without assistance." Id. The analogous "caring for yourself" provision of § 416.926a of the final rules "consider[s] how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." Id. § 416.926a(k).

The regulations specifically address self-injurious actions, such as suicide attempts, in the domain of personal functioning and caring for oneself. For example, the regulations provide: "Personal functioning in adolescents pertains to self-care. . . . Impaired ability in this area is manifested by failure to take care of these needs or *by self-injurious actions*." Id. Pt. 404, Subpt. P, App. 1, § 112.00(C)(4)(a) (emphasis added). Section 416.926a lists examples of limited functioning in caring for oneself. One such example is, "You engage in self-injurious behavior (*e.g.*, suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication), or you ignore safety rules." Id. § 416.926a(k)(3)(iv). In addition, the regulations state that self-injurious behavior should not be considered in the social functioning domain: "Impaired social functioning may be caused by inappropriate externalized actions (e.g., running away, physical aggression—*but not self-injurious actions, which are evaluated in the personal area of functioning*)," id. § 112.00(C)(2)(b) (discussing social function in preschool children) (emphasis added), and "Note that self-injurious actions are evaluated in the personal area of functioning." Id. Part 404, Subpt. P, App. 1, § 112.00(C)(4) (discussing marked impairment in adolescents age 12 to eighteen).

Despite this clear direction to consider suicidal behavior in the area of personal functioning and not in the area of social functioning, the ALJ's opinion only briefly addresses suicide in personal functioning and arguably places a greater emphasis on it in considering Myron's social functioning. With regard to personal functioning, the ALJ found,

In the personal area of development, the claimant has slight limitation of functioning. From the testimony and written statements of the claimant's mother, he is quite capable of handling all his own personal needs, including household chores, when he wants to. When he does not want to, she has not pushed the matter. Obviously, limitations related to the claimant's lack of desire are not the result of a medically determinable impairment. The only medically determinable limitations documented in this area result on rare occasions when the claimant is severely depressed and fails to care for his own safety. At least one of these episodes has been clearly associated with non-compliance with medication. (Exhibit 9F, page 9)[.] Considering the record as a whole, it is found that any limitations in this area are only slight, if the claimant adheres to proper treatment.

(Admin. Tr. at 21.)

Substantial evidence on the record as a whole does not support the ALJ's conclusion for several reasons. First, contrary to the ALJ's finding, the hospital records documenting Myron's March 1999 suicide attempt do not attribute Myron's actions to non-compliance with his medication regimen. Instead, they merely note that Myron had not been compliant: "Myron Moore was admitted due to a suicide attempt (overdose). He was also non compliant with his medication." (Admin. Tr. at 256.) Thus, to the extent the ALJ found that Myron's non-compliance was the cause of his self-injurious behavior, substantial evidence does not support this conclusion. There is no indication that non-compliance was related to any of Myron's other attempted suicides.

Second, the record does not support the ALJ's conclusion that "any limitations in this area [of personal development] are only slight, if the claimant adheres to proper treatment." (Admin. Tr. at 21.) Again, there is no evidence in the record that, prior to his other suicide attempts, Myron failed to adhere to his medication regimen. The only evidence in this regard relates to the single March 1999 hospitalization. As we noted above, the inference that the ALJ made from this evidence is tenuous and

certainly does not amount to substantial evidence that *all* of Myron's suicide attempts were the result of his non-compliance with medication.

Moreover, we do not agree with the Commissioner's position that substantial evidence shows that Myron's depression is controlled. "An impairment which can be controlled by treatment or medication is not considered disabling." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). The record evidence shows that, despite ongoing treatment and medication, Myron continues to suffer from episodic bouts of recurrent major depression. Medication helps to control Myron's condition, but it does not cure it. We know this to be true because Myron's condition improved after his hospitalization and treatment in December of 1998, for example, yet he attempted suicide three months later. And again, after having been counseled about the importance of taking his medications and undergoing treatment, Myron again attempted suicide and was hospitalized in August of 1999. Therefore, substantial evidence does not support the Commissioner's argument that Myron's depression is controlled by medication and treatment and that, consequently, he is not disabled.

Third, substantial evidence in the record as a whole does not support the ALJ's characterization of Myron's suicide attempts as "rare." The undisputed evidence shows that Myron was hospitalized after attempting suicide on three separate occasions during a nine-month period. Moreover, the appellant claims there was a fourth attempted suicide that did not result in hospitalization. The ALJ only noted three suicide attempts in his analysis, and it is unclear whether he discredited the appellant's account of the undocumented attempted suicide or simply failed to address it.

Notwithstanding the foregoing, we do not find that Myron has marked limitation in the area of personal functioning. Indeed, we recognize that, when Myron is not experiencing an episodic bout of depression, he is capable of caring for his own needs, such as doing household chores and attending to his personal hygiene. However, we also do not find that substantial evidence in the record supports the

ALJ's decision to discount Myron's suicide attempts in this area of functioning and to find that they were rare and resulted from Myron's failure to follow his prescribed course of treatment. On remand, the ALJ should evaluate whether Myron has marked limitations in personal functioning, giving proper weight to his serious history of self-injurious actions.

2.    Social Functioning

The rules state that "[s]ocial functioning refers to a child's capacity to form and maintain relationships with parents, other adults, and peers. Social functioning includes the ability to get along with others (e.g., family members, neighborhood friends, classmates, teachers)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C)(2)(b). The analogous "interacting and relating with others" provision of § 416.926a "consider[s] how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his or her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." Id. § 416.926a(i). The regulations expect that adolescents, among other things, will be able to develop friendships with children their own age; relate appropriately to other children and to adults; solve problems; express feeling; and tell stories. Id. § 416.926a(i)(v).

In considering Myron's degree of impairment in social functioning, the ALJ reasoned,

> In the social area of development, the claimant has marked limitation of functioning. Due to the claimant's attention deficit hyperactivity disorder and depression, his social [sic] the undersigned Administrative Law Judge concludes that he is markedly limited for significant periods of time. He has attempted suicide on three occasions and he has demonstrated temper outbursts that have resulted in serious disciplinary actions at school. However, much of the time the claimant is quite able to function in the social area. He has participated in team sports at

-17-

school and, as noted by his resource teacher, he is generally quite capable of relating to classmates. (Exhibit 1E). In a structured setting the claimant has demonstrated the ability to improve his depression and anger control and has been quite pleased with his success (Exhibit 20F).

When the evidence, as developed at the hearing level, is considered in its entirety, the Administrative Law Judge finds that the claimant is more limited in his social abilities than was concluded by the State Agency physicians. Nonetheless, he does retain significant abilities in this area. Although his mother has asserted that the claimant only hangs around with children who are eight to ten years old, this is not consistent with his school records, the knee injury he received playing on the school basketball team or the claimant's own testimony. He stated that he liked to spend his free time at home by going to shoot baskets or skateboard with his friends. These activities are certainly consistent with the activities of someone the claimant's age.

(Admin. Tr. at 20-21.)

The Commissioner and the appellant agree that the ALJ improperly considered Myron's suicide attempts in the social functioning domain. The appellant urges us to sustain the ALJ's finding of marked impairment because, according to the appellant, there is more than sufficient evidence of marked impairment even in the absence of Myron's suicide attempts. We agree that much of the ALJ's analysis is unaffected by his consideration of Myron's self-injurious acts. For example, Myron has documented temper outbursts, has difficulty controlling his anger, cries easily, and has been suspended from school for fighting and for assaulting a teacher. Moreover, Myron's mother claims that his friends are significantly younger than he. However, it is impossible for us to determine the extent to which, if any, the ALJ's consideration of self-injurious acts in the area social functioning undermines his finding of marked limitation. Accordingly, we remand to give the ALJ an opportunity to re-evaluate Myron's degree of impairment in social functioning and, if appropriate, in the final rules' domain of "interacting and relating with others."

-18-

## III.  CONCLUSION

For the reasons stated above, we reverse and remand to the district court with instructions to remand to the ALJ for further proceedings consistent with this opinion.

_____