# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2440

_____

Bonnie Hilkemeyer,       *
      *
     Appellant,       *
      *   Appeal from the United States
     v.       *   District Court for the
      *   Western District of Missouri.
Jo Anne B. Barnhart, Commissioner       *
of Social Security,       *
      *
     Appellee.       *

_____

Submitted: February 13, 2004
Filed: August 26, 2004

_____

Before LOKEN, Chief Judge, BOWMAN and WOLLMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Bonnie Hilkemeyer appeals from the order of the District Court[1] granting summary judgment to the Commissioner of the Social Security Administration on Hilkemeyer's application for supplemental security income ("SSI") benefits. We affirm.

_____

[1]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for decision by consent of the parties pursuant to 28 U.S.C. § 636(c) (2000).

The Commissioner denied Hilkemeyer's application for benefits both initially and upon reconsideration. Hilkemeyer then requested a hearing, which took place in June 2000. On January 10, 2001, the administrative law judge ("ALJ") rendered her decision that Hilkemeyer was not eligible for SSI benefits because she did not suffer from a disability sufficient to entitle her to benefits under the Social Security Act. See 42 U.S.C. § 1382c(a)(3)(A) (2000) ("[A]n individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."). The Appeals Council denied review of the ALJ's decision, which thus stands as the final decision of the Commissioner.

In her initial application, Hilkemeyer alleged that she became unable to work as of June 1, 1998, but at the hearing she amended her onset-of-disability date to April 26, 1999. At the time of the hearing, Hilkemeyer was 39 years old, had completed the tenth grade, had not received her GED, and had no vocational training. She had a limited work history, which included jobs as a cashier, photograph printer, lens cleaner, and some minimal experience working at a book bindery. Hilkemeyer claimed that she was entitled to SSI benefits based on severe exertional and non-exertional impairments.

From 1998 through 2000, Hilkemeyer saw several doctors and other health-care providers for a variety of mental and physical complaints. In June 1998, Hilkemeyer received a diagnosis of depression from Kay Barney, D.O. From June 1998 through May 2000, Hilkemeyer sought treatment for depression from psychiatrist Sreekumar Nair, M.D. In June 1998, Dr. Nair diagnosed Hilkemeyer as suffering from major depressive disorder and dysthymic disorder. In July 1999, Hilkemeyer was examined by a psychologist, Alan Israel, who diagnosed delayed-onset post-traumatic stress disorder, dysthymic disorder, and obsessive-compulsive personality disorder. He opined that Hilkemeyer would have difficulty adapting to

any work-related environment that included men. In contrast, Dr. Nair, who had continued treating Hilkemeyer for depression, noted in August 1999 that she was "much improved." Tri-County Mental Health Servs., Inc., Psychiatric Progress Notes (Aug. 6, 1999). In January 2000, Hilkemeyer decompensated and was admitted to the North Kansas City Hospital. Upon discharge Mohammed Mirza, M.D., diagnosed her with "bipolar disorder, type II, with depression and some paranoid thinking." North Kansas City Hospital, Discharge Summary at 1 (Jan. 21, 2000). Nonetheless, by March 2000, Dr. Nair noted that Hilkemeyer was "doing better" and was stable. Tri-County Medical Health Servs., Inc., Integrated Progress Notes (Mar. 17, 2000). In July 2000, Hilkemeyer's mental status was evaluated by another psychologist, Franklin Boraks, who diagnosed panic disorder with agoraphobia, major depression and obsessive-compulsive disorder.

In addition to these complaints of mental disorders, Hilkemeyer sought treatment for a variety of physical ailments from 1998 to 2000. In June 1999, Hilkemeyer complained of swelling in her left hand, but x-rays demonstrated normal anatomy throughout. A sleep study conducted in July 1999 indicated moderately severe sleep apnea, but the condition was improved by the use of a continuous positive airway pressure ("CPAP") machine. Despite complaints of right knee pain in March and April 2000, x-rays indicated no abnormality.

At the hearing, Hilkemeyer testified that she had pain in her right knee, which limited her ability to stand for long periods of time. Similarly, she indicated an old wrist injury restricted her ability to lift more than five pounds. She testified to shortness of breath and to the use of inhalers to treat asthma but admitted that she continued to smoke. She indicated that she had difficulty being around men, but revealed that she had lived with a man until the day before the hearing. She testified to keeping up with the household chores such as vacuuming, doing laundry, and cleaning. She indicated that she drove herself to doctor's appointments and to the grocery store. As to her mental faculties, Hilkemeyer testified to difficulties with her

short-term memory and, because of recurring nightmares, with her sleep patterns. She further testified to feeling anxious while in crowds and to wanting to spend most of her time in her apartment away from others. She claimed that she had left former employment due to mental stress occasioned by dealing with her co-workers.

In her written decision, the ALJ carefully worked through the five-step sequential analysis to determine whether Hilkemeyer was disabled and entitled to SSI benefits. See 20 C.F.R. § 416.920(a)(4)(i)–(v) (2004) (setting forth the five-step analysis). The ALJ first determined that Hilkemeyer had not performed any substantial gainful activity while her application was pending. At the second step, the ALJ noted that the medical evidence in the record established that Hilkemeyer had a severe affective disorder,[2] but the ALJ determined that the diagnosed post-traumatic stress disorder, obsessive-compulsive disorder, and dysthymia were either non-severe or not corroborated by clinical evidence in the record. She further determined that the alleged physical impairments—the right knee disorder, sleep apnea and pulmonary dysfunction—were not severe. Next, the ALJ determined that Hilkemeyer's affective disorder did not reach listing level. See 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04 (detailing the required level of severity for affective disorders to entitle a claimant to benefits under 20 C.F.R. § 416.920(a)(4)(iii)). The ALJ considered all the medical evidence she found credible and determined that Hilkemeyer had the RFC to perform medium or light work, so long as she was limited to simple repetitive tasks with no work with the public and a low degree of contact with her co-workers and supervisors. In light of Hilkemeyer's sporadic work history, the ALJ determined that there was no past relevant work to which she could return.

---

[2]An affective disorder is a "severe mental disorder marked by periods of extreme depression or elation." 1 J. E. Schmidt, Attorney's Dictionary of Medicine and Word Finder at A-185 (perm. ed., rev. vol. 2003).

At the hearing, the ALJ had taken the testimony of a vocational expert ("VE"). The ALJ asked the VE whether jobs existed in the national economy for an individual of the same age, education, and work experience as Hilkemeyer, who had the residual functional capacity ("RFC") to perform medium work, and who could only perform simple, repetitive tasks, with no work with the public, and with limited contact with co-workers and supervisors. The VE testified that there were numerous jobs widely available in the national and regional economies for such an individual, including order picker, machine tender, photocopy-machine operator, and light cleaner. Based on the VE's testimony, the ALJ concluded that, in view of Hilkemeyer's ability to perform jobs available in the national economy requiring only medium or light work, she was not disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, R. 202.18 & 203.25.

In this appeal, Hilkemeyer argues that the evidence in the record does not support the ALJ's findings. She also argues that the hypothetical question posed to the VE was defective because it was based upon an RFC finding that is not supported by the evidence. For the reasons set forth below, we affirm.

We have jurisdiction under 42 U.S.C. § 1383(c) (2000). "We must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 646 (8th Cir. 2004) (citing 42 U.S.C. § 405(g)). Our review is deferential; we may not substitute our judgment for that of the ALJ. Garrett, 366 F.3d at 646. Substantial evidence is less than a preponderance, and it merely requires that the record contain evidence sufficient for a reasonable individual to find it adequate to support the conclusions drawn by the ALJ. Masterson v. Barnhart, 363 F.3d 731, 736 (8th Cir. 2004).

Hilkemeyer first argues that the ALJ did not properly determine the severity of her impairment. Although Hilkemeyer argues otherwise, the ALJ's written decision is clear and explains that, despite Hilkemeyer's complaints of numerous physical and mental impairments, the clinical evidence in the record supports only a conclusion

that her affective disorder was a severe impairment. Social Security Administration Office of Hearings and Appeals, Decision at 2 (Jan. 10, 2001). The ALJ thoroughly considered all of the medical evidence in reaching this conclusion, which is based on substantial evidence in the record as a whole. The ALJ carefully considered the evidence from Hilkemeyer's treating sources,[3] who all agreed that Hilkemeyer was suffering from a depression. The ALJ noted that the diagnoses of other mental disorders by others who examined Hilkemeyer, such as Boraks and Israel, were not consistent with the diagnoses in the treatment record nor with their own notes and examinations, so the ALJ refused to give them significant weight. The record evidence shows that the only consistent diagnosis from Hilkemeyer's treating sources was affective disorder; thus the ALJ was justified in rejecting diagnoses of other mental disorders by sources who conducted a single examination of Hilkemeyer, and whose conclusions seemed to be based solely upon her subjective complaints. Furthermore, substantial evidence supported the ALJ's conclusion that Hilkemeyer's physical impairments were non-severe: the sleep apnea was ameliorated by use of a CPAP machine and x-rays and MRI results indicated no knee abnormalities.

Hilkemeyer also argues that the ALJ erred in failing to conclude that Hilkemyer was disabled under Listings 12.04 and 12.08. See 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04 (affective disorders) & 12.08 (personality disorders). Because the ALJ's determination that Hilkemeyer's only severe impairment was an affective disorder is supported by substantial evidence, the only relevant listing at step three of the analysis was Listing 12.04. The ALJ's decision to reject considering Hilkemeyer's claim under other listings is supported by substantial evidence. Furthermore, her

---

[3]Hilkemeyer claims that the ALJ fails to identify these treating sources, but, in her decision, the ALJ clearly referenced the reports of those individuals who are treating sources. Soc. Sec. Admin. Office of Hearings & Appeals, Decision at 3, 5 (Jan. 10, 2001). Furthermore, at the hearing Hilkemeyer recognized Dr. Nair as her treating psychiatrist. Soc. Sec. Admin. Office of Hearings and Appeals, Tr. of Oral Hearing at 3 (June 23, 2000).

determination that Hilkemeyer's affective disorder does not reach listing level is also supported by substantial evidence. Before an affective disorder is sufficiently severe that it leads to the automatic payment of SSI benefits under § 416.920(a)(4)(iii), it must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(B). Hilkemeyer's disorder only led to slight restrictions on the activities of daily living: she testified that she is able to do minor household chores, drive to her doctor's appointments, and go grocery shopping with the aid of her daughter. Hilkemeyer's moderate social dysfunction was not sufficient to meet listing requirements. Furthermore, medical evidence from treating and examining sources alike indicated that her abilities to concentrate and remember were in the normal range. See Campbell & Associates, Psychological Eval. Report at 2, 3 (July 31, 2000); Alan R. Israel, Consultative Examination Report at 2, 3 (July 13, 1999); Tri-County Mental Health Servs., Inc., Initial Psychiatric Eval. at 2 (June 30, 1998). Finally, substantial evidence supported the ALJ's determination that Hilkemeyer had suffered only a single episode of decompensation of extended duration. The ALJ did not err in determining that Hilkemeyer's affective disorder did not reach listing level.

Hilkemeyer argues that the ALJ erred in finding Hilkemeyer had the RFC to perform medium or light work. We disagree. The ALJ's RFC determination is based on substantial evidence in the record. In examining all the relevant credible evidence in the record, 20 C.F.R. § 416.945, the ALJ properly determined that Hilkemeyer retained the residual functional capacity for a range of medium to light work, so long as it was restricted to simple repetitive tasks, with no work with the public, and with a limited degree of contact with co-workers and supervisors. The evidence from various examiners is that Hilkemeyer's memory and concentration abilities were in the normal range, so the ALJ did not err when she determined that Hilkemeyer's purported memory difficulties were not sufficient to limit her ability to perform

simple tasks. Similarly, substantial evidence supported the ALJ's conclusion that Hilkemeyer suffered from moderate social dysfunction, which the ALJ took into account by not requiring Hilkemeyer to perform work with the public and to have only limited contact with co-workers and supervisors.

Hilkemeyer argues that due to her pulmonary dysfunction her RFC should have limited her exposure to fumes, odors, dust, gases, and poor ventilation. Medical evidence in the record indicated only a mild pulmonary dysfunction. The ALJ's decision not to incorporate this mild pulmonary dysfunction in the RFC, as well as in the hypothetical posed to the VE, was not error because the record does not suggest there were any limitations caused by this nonsevere impairment.[4] The VE's testimony that Hilkemeyer could perform work in the national economy provided substantial evidence in support of the ALJ's determination that Hilkemeyer was not disabled. Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993) (per curiam).

For the reasons set forth above, we affirm the District Court's order.

_____

[4]Hilkemeyer also argues that the ALJ should have recognized limits imposed by Hilkemeyer's pulmonary dysfunction because such limits were recognized in the physical RFC determination made upon Hilkemeyer's initial application for SSI benefits. We reject this argument because the ALJ is not bound by such earlier findings. See 20 C.F.R. 416.946(c) ("If your case is at the [ALJ] hearing level . . . the [ALJ] . . . is responsible for assessing your [RFC].").