# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3865MN

_____

Michael J. Morrison,

        Appellant,

    v.

Kenneth S. Apfel, Commissioner
of Social Security,

        Appellee.

\* On Appeal from the United
\* States District Court for the
\* District of Minnesota.

_____

Submitted: May 14, 1998

Filed: July 17, 1998

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Michael J. Morrison appeals the District Court's grant of summary judgment affirming the Social Security Commissioner's decision to deny Morrison's application for disability insurance benefits. We reverse and remand for further proceedings by the Social Security Commissioner.

On December 2, 1993, Michael Morrison filed an application with the Social Security Administration for a period of disability and disability insurance benefits, pursuant to 42 U.S.C. §§ 416(i), 423 (1994). After his application was denied initially and on reconsideration, he requested and received a hearing. Morrison testified before an administrative law judge (ALJ) on September 26, 1994. James W. Berglie, a vocational expert, also testified at the hearing.

The evidence from Morrison's doctors produced at the administrative hearing showed that Morrison suffers from "progressive degenerative arthritis" which causes multiple joint problems. Tr. at 391. At various times, the arthritis has caused him pain in his lower back, knees, hips, hands, ankles, and shoulders. Tr. at 304, 308, 311, 315, 356. Between 1986 and 1990, Morrison underwent arthroscopic surgery several times on his knees for problems related to his arthritis. Tr. at 315. Morrison testified at the hearing that he could not sit for more than ten or fifteen minutes at a time; he cannot stand for more than fifteen minutes at a time; he cannot walk for more than 200 feet at one time; he cannot walk without a cane; and he cannot lift and carry more than ten pounds on a regular basis. Tr. at 63, 66, 69, 71. Some of the medication Morrison takes for pain and inflammation caused blurred vision for ten to fifteen minutes and caused some diarrhea, which Morrison alleviates by drinking milk. Tr. 55-56. Morrison also produced evidence at the hearing that on March 25, 1993, a doctor with the Department of Veterans Affairs (VA) conducted an extensive medical examination on him. The VA doctor determined that because of his medical problems, Morrison was "unable to obtain and maintain gainful employment" and was entitled to a veteran's pension as of May 18, 1992. Tr. at 356.

The evidence at the hearing also revealed that Morrison is obese and has struggled with weight problems for years. In March 1993, a few months before he filed for disability benefits, Morrison weighed approximately 330 pounds and stood at six

feet, one-and-a-half inches tall.  Tr. at 359.  Dr. Lee A. Cristoferson, one of Morrison's doctors, remarked in April 1993 that Morrison's weight was his biggest problem, and that Morrison's obesity had caused most of the difficulties in his back, knees, and lower extremities.  Tr. at 391.  Cristoferson prescribed an exercise program for Morrison in early 1992, but Morrison, citing time and financial constraints, declined to participate.  Tr. at 316.  In May 1987, when he weighed 324 pounds, Morrison underwent gastroplasty surgery for his obesity, and subsequently lost 126 pounds.  Tr. at 324.  However, he later gained the weight back.

From 1988 to 1991, Morrison worked as a chef in a restaurant, a hotel, and a college cafeteria, but he stopped working in April 1991.  Tr. at 38-39, 291.  At the hearing, the ALJ questioned James Berglie, the vocational expert, about the possible jobs Morrison could take, given his functional limitations.  The ALJ examined Berglie using hypothetical questions, asking Berglie what type of work Morrison could perform given the alleged standing, sitting, and walking limitations caused by his arthritis, and given Morrison's skills and training.  Tr. at 99-102.  The ALJ did not mention Morrison's obesity in the questions he posed to Berglie.  Berglie responded that, given Morrison's alleged functional limitations, he could perform work as a cashier, a gate attendant, a telemarketer, a phone dispatcher, a receptionist, and possibly as a factory worker in some capacity.  Berglie also stated that thousands of these types of jobs exist in the regional economy in North Dakota, South Dakota, and Minnesota.  Tr. at 101, 103.

In a decision filed on June 20, 1995, the ALJ denied Morrison's application for disability insurance benefits and held that he had the capacity to work.  The ALJ's decision reviewed Morrison's medical history and the statements of Dr. Cristoferson and Dr. Joseph Sleckman, another of Morrison's doctors.  It also reviewed Morrison's work history and the testimony of the vocational expert.  While the ALJ found that Morrison had some "severe" impairments, he also found that through March 31, 1993, the date he was last insured for disability insurance purposes, Morrison "was able to

perform the light and sedentary jobs identified by the vocational expert in response to the hypothetical situation." Appellant's Add. at 33. Notably, the ALJ never addressed the report by the VA doctor that Morrison could not work and was entitled to a government pension.

Morrison filed a timely request for review of the decision, and the Appeals Council denied the review of the ALJ's decision on July 17, 1996. Appellant's Add. at 36. Morrison then filed a complaint in the District Court. The Social Security Commissioner and Morrison both filed motions for summary judgment, with the Commissioner asking the District Court to affirm the ALJ's decision, and Morrison asking the Court to reverse or remand the case for further proceedings. On August 20, 1997, the District Court, adopting the report and recommendation of a magistrate judge, denied Morrison's motion and granted summary judgment in favor of the Commissioner. Morrison now appeals.

II.

We hold that the ALJ erred in two respects. First, in his decision, the ALJ should have addressed the determination by the VA that Morrison is permanently and totally disabled. It is true that "the ALJ does not have to discuss every piece of evidence presented . . .." Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993). It is also true that a disability determination by the VA is not binding on an ALJ considering a Social Security applicant's claim for disability benefits. See Jenkins v. Chater, 76 F.3d 231, 233 (8th Cir. 1996). We think, however, that the VA finding was important enough to deserve explicit attention. We agree with other courts that findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision. See Wilkins v. Callahan, 127 F.3d 1260, 1262 (10th Cir. 1997); Baca v. Department of Health and Human Services, 5 F.3d 476, 480 (10th Cir. 1993); Fowler v. Califano, 596 F.2d 600, 603 (3d Cir. 1979).

It may be, as the Commissioner suggests, that the ALJ's failure to address the VA findings constituted an "implicit rejection" of the finding of disability by the VA. Appellee's Br. at 24. Nonetheless, an extensive physical examination documenting Morrison's medical problems, followed by a finding of a permanent and total disability by another government agency, all of which occupies some thirty pages in the record, merits more than simply an implicit rejection. If the ALJ was going to reject the VA's finding, reasons should have been given, to enable a reasoned review by the courts. We are fortified in this conclusion by the fact that the Social Security Administration has given this very instruction to its adjudicators. A 1992 memorandum from the Social Security Administration's Chief Administrative Law Judge to the Office of Hearings and Appeals field personnel reminded "all ALJs and decision writers that even though another agency's determination that a claimant is disabled is not binding on SSA . . ., the ALJ must evaluate it as any other piece of evidence, *and address it in the decision.*" Memorandum, Social Security Administration Office of Hearings and Appeals (Oct. 2, 1992), at 3 (emphasis added).

We also hold that the ALJ erred in failing to mention obesity in the hypothetical questions he posed to James Berglie, the vocational expert. When an ALJ poses hypothetical questions to a vocational expert to determine the availability of other work, the ALJ "must precisely set out all of the claimant's impairments." O'Leary v. Schweiker, 710 F.2d 1334, 1343 (8th Cir. 1983). The ALJ did include Morrison's alleged functional limitations in the questions he posed to Berglie, including Morrison's need of a cane for walking, his inability to sit or stand in place for more than fifteen minutes at a time, his inability to walk more than 200 feet at a time, the problems he had climbing stairs, and the fact that his ankles often swelled. Tr. 100-01. We believe, however, that Morrison's obesity should have also been included in the hypothetical questions. As the Commissioner notes in his brief, Dr. Cristoferson, Morrison's treating physician, identified obesity as Morrison's "biggest problem" and noted that Morrison had been "fighting [his weight problem] for years." Tr. 391. While Morrison's weight does not meet the listing level at which he would be automatically

disabled by his obesity, at the time of the hearing, he was within sixteen pounds of meeting the listing. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1997). Given Morrison's history with weight problems and the identification of obesity as a major problem by Morrison's doctor, obesity may have been a legally relevant factor that the expert could have used in determining whether other work was available for Morrison. We do not believe that a 200-pound man with Morrison's exertional impairments would be regarded as indistinguishable, for disability purposes, from a 330-pound man with these impairments. At any rate, if an expert is going to reach such a counterintuitive conclusion, we think he should be asked to explain it.

The ALJ failed to address the VA report in his findings, and he did not include Morrison's pronounced obesity in the questions he posed to the vocational expert. We therefore reverse the judgment and remand this case to the District Court, with directions to that Court to remand to the Social Security Administration for further proceedings consistent with this opinion.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.