# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2971

_____

James Juszczyk,

        Plaintiff–Appellant,

v.

Michael J. Astrue, Commissioner
of Social Security,

        Defendant–Appellee.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.
\*
\*
\*
\*

_____

Submitted: April 18, 2008
Filed: September 15, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

James Juszczyk applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. His application was denied, and a timely request for hearing was filed. After a hearing, an administrative law judge of the Social Security Administration again denied Juszczyk's application, finding he was not under a "disability" as defined in the Act. The Appeals Council denied Juszczyk's

request for review, and the district court[1] affirmed.  Juszczyk appeals, and we affirm the decision of the district court.

## I.

In October 2000, Juszczyk was seriously injured in an auto accident that also injured his wife and resulted in his son's death.  This accident caused Juszczyk to suffer crushed bones, multiple fractures, and trauma, and left him with residual pain, limitation on motion, and a left shoulder disorder.  Juszczyk also suffers from depression and anxiety.

The administrative record included hearing testimony from Juszczyk; Juszczyk's wife; a vocational expert; and a medical expert, Dr. Seymour Liberman.  Dr. Liberman testified from the medical records created by Juszczyk's treating psychologist, Dr. John H. Stanley, and another psychologist, Dr. Robert Pulcher.  The record also included reports completed by Dr. Stanley and Dr. Pulcher, as well as reports from Dr. Heather Flageman and Dr. Kathleen King.  The record also contains Juszczyk's employment records and questionnaires he filled out assessing his own mental limitations.

At the administrative hearing, Juszczyk testified extensively and detailed several physical and mental complications, which, if accepted as credible, would likely entitle him to disability benefits.  Juszczyk's wife testified that Juszczyk suffered depression.  She said some days he cannot leave the apartment because "[t]hings get to him, like Father's Day or anniversaries of accidents."  She testified that he had had a very close relationship with their son who died in the accident.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

In January 2005, Dr. Stanley, Juszczyk's treating psychologist before and after the October 2000 accident, determined Juszczyk had severe mental limitations—other treatment providers did not assess Juszczyk's mental limitations as severely. Dr. Stanley assessed Juszczyk's Global Assessment of Functioning (GAF) score at 35 to 40.[2] Dr. Stanley's report identified Juszczyk as having, inter alia, "very low frustration tolerance," poor memory, recurrent panic attacks, paranoia, anxiety, hostility and irritability, problems with mood and personality, and suicidal ideation. Dr. Stanley determined that Juszczyk could be expected to be absent from work more than three times a month and that he had poor or no ability to maintain regular attendance, to be on time, to work in proximity with others without being unduly distracted, or to perform at a constant pace. Dr. Stanley reported that Juszczyk had moderate limitations on his daily living activities, marked difficulties maintaining social functioning, and constant deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner.

In addition to the January 2005 report, the record also included additional reports from Dr. Stanley. In January 1998, more than two years before the accident, Dr. Stanley reported Juszczyk had thoughts of suicide, anxiety, mood swings, irritability, and difficulty concentrating. Juszczyk was easily distracted, he forgot where he put things, he would dwell and obsess over problems, and he found it hard to tolerate interruption. Dr. Stanley diagnosed Juszczyk with adult attention deficit disorder and obsessive compulsive traits. In August 2001, almost a year after the accident, Dr. Stanley again assessed Juszczyk's mental impairments. In a space on a reporting form where Stanley was asked to "[d]escribe any evidence of a mental problem which impacts the patient's ability to perform basic tasks and make decisions required for daily living," he responded that Juszczyk was "[c]ompetitive" and "hard

_____

[2]"[T]he Global Assessment of Functioning Scale is used to report 'the clinician's judgment of the individual's overall level of functioning.'" Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (quoting Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Revision 2000)).

working," yet also "impulsive," and had difficulties in sustaining concentration and maintaining focus. In April 2004, Dr. Stanley noted his primary diagnosis for Juszczyk was post traumatic stress disorder, adult attention deficit disorder, and obsessive compulsive disorder with panic attacks. Dr. Stanley determined Juszczyk was permanently incapacitated and would be unable to engage in full-time employment on a regular basis at a normal wage rate that would fit his age, training, and experience.

In November 2000, Dr. Flageman, one of the reviewing physicians, reported that Juszczyk was "very frustrated" because he did not remember the details of his accident and that he heard a "mechanical, grating" sound when he tried to sleep. She noted he suffered from grief and acute post traumatic stress disorder, and her recommendation was to continue with normal grief evaluation and to begin counseling.

The record also contained numerous questionnaires in which Juszczyk assessed his mental impairments over the course of many years. He repeatedly noted he had moderate problems with depression, mood swings, anger outbursts, and anxiety and panic. On occasion, he identified these problems as serious. He also indicated moderate problems with crying episodes and thoughts of self-harm. Also included in the record were Juszczyk's earnings records from 1977 until 2000, which indicated Juszczyk's annual earnings varied widely. During this period, Juszczyk's regular earnings exceeded $8,000 in only seven of the twenty-four years.

Dr. Seymour Liberman, a medical expert who reviewed Juszczyk's medical records, testified as to Juszczyk's physical and mental impairments. A few months after the accident, Juszczyk had difficulties with his shoulders and elbows. He was able to put on a pullover shirt, comb and brush his hair, turn a doorknob and pull up his trousers, although he was unable to bring food to his mouth with his right hand and had difficulty opening jars. Medical records indicate that Juszczyk could occasionally

lift twenty pounds, and frequently ten pounds. He could stand, walk, and sit six out of eight hours. Additionally, Dr. Liberman testified that based on these records, a few months after the accident, Juszczyk could only occasionally climb stairs, balance, kneel, crouch, or crawl. Dr. Liberman testified he did not have any recent information on Juszczyk's physical capabilities, and that more recent problems with his right shoulder may have resulted in these problems increasing.

Regarding Juszczyk's mental impairments, Dr. Liberman testified that Juszczyk suffers from multiple psychological problems—including attention deficit disorder, post traumatic stress disorder, and severe obsessive compulsive traits—and that he possibly suffers from bipolar disorder. Dr. Liberman also testified that the record includes conflicting evidence as to the severity of Juszczyk's mental impairments.

Around the same time Dr. Stanley issued his report assessing Juszczyk's GAF at 35 to 40, another psychologist, Dr. Pulcher, assessed Juszczyk's GAF at 50. Dr. Pulcher's report concluded that although Juszczyk needed therapy and possibly medication, "[t]here [were] no indications of any mental impairments that would keep [him] from working." Dr. Pulcher rated Juszczyk's abilities highly, reporting he had a "more than satisfactory" ability to follow work rules, deal with the public, interact with supervisors, handle work stress, and maintain attention and concentration, and a "limited but satisfactory" ability to relate to his co-workers, use judgment, and function independently. In all other areas, Dr. Pulcher found Juszczyk's abilities were either "more than satisfactory" or "not limited by a mental impairment." Dr. Pulcher administered multiple psychological tests, and most of the test results indicated Juszczyk's mental abilities were average to mildly impaired. While Juszczyk's results on one of the tests indicated more severe problems, Dr. Pulcher concluded that these results "must be interpreted with caution," as the scores were "extremely high," suggesting exaggeration and malingering. Dr. Pulcher doubted the validity of the test, and stated "this test was exaggerated to make [Juszczyk] look worse than is really the case." Dr. Pulcher reported that if Juszczyk's statements as to the severity of his

mental impairments were true, he would need psychiatric hospitalization or at least ongoing psychological therapy.

At the hearing, Dr. Liberman testified that, based on Juszczyk's testimony, Juszczyk "might be capable of sedentary work," but not of light work. Dr. Liberman clarified, however, that based on all the evidence, Juszczyk would be capable of sedentary work. When Dr. Liberman discounted Juszczyk's testimony, he concluded that Juszczyk would be capable of more: "light work with many caveats."[3]

The record also contained reports from other medical professionals. In October 2000, a consultant at Truman Medical Center noted that Juszczyk was "demoralized" from his accident and that this was "a normal reaction." At the time, the consultant determined Juszczyk did not show any sign of needing antidepressant medications. A discharge report states that Juszczyk had been a possible suicide risk, but that the hospital personnel determined he was no longer at risk.

In August 2001, Dr. King reported that Juszczyk had mild limitations in his daily living and social functioning activities and moderate difficulties in maintaining concentration, persistence, the ability to understand, remember, and carry out detailed instructions. He was not "markedly limited" in any of the abilities assessed, and he was not significantly limited in most of the abilities assessed, including his ability to remember locations and work-like procedures, to maintain attention and concentration for extended periods, to maintain regular attendance, to be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and

---

[3]These caveats include no heavy overhead lifting or stooping and only occasional stair climbing, balancing, kneeling, crouching, or crawling.

length of rest periods. Dr. King noted that Juszczyk lives with his wife, helps to raise a child, and can manage money. She noted that Juszczyk's treating physician had not prescribed medication for bipolar disorder, and reported that his "[psychological] problems alone do not appear severe enough to prevent [him] from performing at least less demanding tasks."

A vocational expert testified in response to two hypothetical questions the ALJ posed. The first question included physical limitations of a nature and extent expressed by Dr. Liberman and not as severe as Juszczyk's testimony indicated. This question also included mental limitations of the same nature and extent as those Dr. Pulcher reported, which were less severe than Dr. Stanley and Juszczyk indicated.[4] In response to this, the vocational expert testified there are numerous jobs in the state and national economies Juszczyk could perform. The second hypothetical question included more serious physical and mental limitations, based on Juszczyk's testimony

---

[4]Specifically, this first hypothetical question posed whether jobs could be performed by someone who could lift and carry twenty pounds on an occasional basis and ten pounds frequently, who could stand and walk for at least thirty minutes at a time for a total of four hours in an eight hour day, who could sit with normal breaks and rest periods for six hours in an eight hour day, who would be unable to perform work involving overhead work, repetitive reaching, ladders, scaffolds, or high unprotected work areas, who would be unable to drive, who could only occasionally stoop, kneel, crouch, crawl, or use stairs, and who would have a "limited but satisfactory" ability to relate to co-workers, use judgment, and function independently.

and Dr. Stanley's assessment.[5]  In response to this question, the vocational expert testified there would not be any jobs in the national economy Juszczyk could perform.

Based on the record and testimony presented at the administrative hearing, the ALJ determined Juszczyk was not disabled and that he was not precluded from working in jobs that existed in significant numbers.  The ALJ determined whether Juszczyk was disabled using the regulatory five-step evaluation process.  See 20 C.F.R. § 416.920(a)(4); Davidson v. Astrue, 501 F.3d 987, 988 (8th Cir. 2007).

In reaching this determination, the ALJ considered the evidence described above.  The ALJ found Juszczyk to be only partially credible, based on evidence that he had been in and out of the work force and had earnings below a level of substantial gainful activity for many years, even in the absence of an alleged disability.  Additionally, the ALJ noted that the objective medical evidence did not support Juszczyk's allegations as to the depth and severity of his physical impairments.  The ALJ also found Dr. Stanley's GAF assessment to be incredible, noting that if the assessment were true, Juszczyk would require hospitalization, and noting it was inconsistent with 90% of Dr. Stanley's records, which the ALJ found classified Juszczyk's symptoms as mild to moderate.

Based on the evidence, the ALJ determined Juszczyk's residual functional capacity.  A residual functional capacity assessment determines what claimants would be capable of doing despite their physical and mental limitations.  20 C.F.R. §

---

[5]The second hypothetical question posed whether there are jobs in the national economy that could be performed by someone with the same non-exertional limitations as were included in the first question, but who could lift and carry only ten pounds on an occasional basis and negligible weights frequently, who could stand and walk for only fifteen minutes at a time for a total of two hours in an eight hour day, who could sit with normal breaks and rest periods for six hours in an eight hour day, and who would have mental limitations as Dr. Stanley identified in his assessment.

404.1545(a); McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003). The ALJ concluded that at all times Juszczyk retained a residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, to stand or walk thirty minutes at a time for a total of four hours in an eight hour day, and to sit for six hours in an eight hour day. He could only occasionally stoop, kneel, crouch, crawl, or climb stairs. The ALJ concluded Juszczyk could not work on ladders, scaffolding at heights, or in unprotected work areas. He could not drive commercially or engage in overhead work or repetitive reaching. Based on this and the first hypothetical question posed to the vocational expert, the ALJ determined that at all relevant times, Juszczyk was capable of performing jobs that exist in significant numbers in the national economy and that he was not disabled within the meaning of the Social Security Act. The district court affirmed this decision.

## II.

"We review the district court's decision de novo," and "uphold the . . . denial of benefits . . . if the ALJ's decision is supported by substantial evidence in the record as a whole." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). "Substantial evidence  is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id.

On appeal, Juszczyk asserts the denial of his claim for disability insurance benefits was not supported by substantial evidence on the record as a whole. Specifically, Juszczyk makes four arguments. He argues that the ALJ applied the incorrect legal standard for determining residual functional capacity, that the ALJ failed to consider his mental impairments in determining his residual functional capacity, that the ALJ applied the incorrect legal standard in evaluating the testimony of Dr. Stanley, as the treating physician, and that the ALJ improperly relied on the testimony of the vocational expert who testified based on a hypothetical question that did not include Juszczyk's non-exertional impairments. Many of these arguments are

based on a challenge to the ALJ's decision to discount Juszczyk's testimony and Dr. Stanley's GAF assessment. Therefore, we will address these two points before addressing specifically the four arguments Juszczyk raises on appeal.

## A.

The ALJ found Juszczyk's testimony to be not wholly credible. The ALJ explained this determination was supported by evidence of Juszczyk's work history. He was in and out of work for many years and also did not report earnings at a level indicating substantial gainful activity, even in the absence of an alleged disability. The ALJ also explained that the objective medical evidence, including clinical findings, did not support Juszczyk's testimony as to the depth and severity of his physical impairments. We defer to the ALJ's well-supported determination that Juszczyk's testimony was not wholly credible. Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003); see also Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007) (deferring to the ALJ's credibility finding because the ALJ pointed to substantial evidence in the record supporting her decision to discount the claimant's subjective allegations). Additionally, we note that Dr. Pulcher also doubted Juszczyk's credibility and that Dr. King determined Juszczyk was not more than mildly limited. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg, 354 F.3d at 714.

## B.

The ALJ did not rely on Dr. Stanley's assessment of Juszczyk's mental limitations. ALJs are not obliged to defer to treating physician's medical opinions unless they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the record." Ellis v. Barnhart, 392 F.3d 988, 995 (8th Cir. 2005) (quotations omitted). The ALJ rejected Dr. Stanley's assessment because it was inconsistent with Dr.

-10-

Stanley's own treatment notes, with objective testing, and with other medical evidence in the record. Our review of the record, including reports from Dr. Pulcher, Dr. King, Dr. Flageman, and the Truman Medical Center confirms the ALJ's conclusion.

Juszczyk argues that the ALJ rejected Dr. Stanley's assessment based on credibility judgments, speculation, or lay opinion, in violation of a Third Circuit decision, Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). However, we find that the ALJ rejected Dr. Stanley's assessment based on contradicting medical evidence, not on the ALJ's own judgments or opinions. See id. (noting an ALJ may reject a treating physician's assessment on "contradictory medical evidence").

Juszczyk argues that the ALJ rejected Dr. Stanley's opinion based on the ALJ's own unsubstantiated lay opinion by stating that if the information in Dr. Stanley's GAF assessment were true, Juszczyk would require hospitalization. We note that it was Dr. Pulcher's medical opinion that Juszczyk would need psychiatric hospitalization or at least ongoing psychological therapy if Juszczyk's assessments of his own impairments were true. In the context of the ALJ's decision, the ALJ was not expressing a medical opinion. Instead, the statement indicated the ALJ considered Dr. Stanley's GAF assessment to be so extreme—in light of contradictory medical evidence and the fact that no one recommended Juszczyk be hospitalized—that the ALJ determined Dr. Stanley's GAF assessment could not be relied on. We have held that an "ALJ may discount or disregard [a treating physician's] opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). We find that the ALJ applied the correct legal standard in evaluating Dr. Stanley's testimony and that the ALJ's decision not to rely on Dr. Stanley's GAF assessment was supported by substantial evidence.

III.

A.

Juszczyk's first argument is that the ALJ applied the incorrect legal standard for determining functional capacity. Whether the ALJ based his decision on a legal error is a question we review de novo. Dewey v. Astrue, 509 F.3d 447, 449 (8th Cir. 2007). Although he is not specific in his argument, Juszczyk explains that functional capacity should be determined by considering all the relevant evidence in the case record, and that the assessment of his residual functional capacity must reflect the most sustained work activity he can do for eight hours a day, five days a week. He quotes this court's opinion in McCoy v. Schweiker, 683 F.2d 1138 (8th Cir. 1982) (abrogated on other grounds by Forney v. Apfel, 524 U.S. 266, 267 (1988)), and notes that the functional-capacity evaluation must be a realistic evaluation of his abilities to work "day in and day out . . . in the sometimes competitive and stressful conditions in which real people work in the real world" and "not the ability merely to lift weights occasionally in a doctor's office." Id. at 1147.

Juszczyk neither identifies evidence the ALJ failed to consider nor specifies how the ALJ's assessment was unrealistic. We find that in determining Juszczyk's residual functional capacity, the ALJ engaged in a realistic assessment of Juszczyk's abilities. The ALJ considered the extent to which Juszczyk could perform on an occasional and frequent basis, and the extent to which he could stand and sit over the course of an eight hour day.

While there is evidence in the record indicating Juszczyk would have difficulties performing in stressful and competitive conditions, this evidence is in the form of Juszczyk's testimony, which the ALJ found to be not wholly credible, and Dr. Stanley's report, to which the ALJ did not give controlling weight. As explained

-12-

above, substantial evidence supports the ALJ's determinations. We find that the ALJ applied the correct legal standard in assessing Juszczyk's residual functional capacity.

## B.

Juszczyk also argues that the ALJ failed to consider his mental impairments in assessing his residual functional capacity. However, we find that the ALJ considered the evidence as a whole and determined Juszczyk suffered mental impairments of a nature and to an extent as indicated by Dr. Pulcher's report. Juszczyk offered evidence indicating more severe mental impairments. The ALJ, however, accorded more weight to Dr. Pulcher's report, and we find substantial evidence supports the ALJ's conclusion.

## C.

Juszczyk argues that the ALJ failed to apply the correct legal standard in evaluating the opinion of Dr. Stanley, as the treating psychologist. As explained above, the ALJ did not give controlling weight to Dr. Stanley's opinion because Dr. Stanley's assessment of Juszczyk's mental limitations contradicted substantial medical evidence in the record, including objective clinical testing. We find substantial evidence supports this determination. See Ellis, 392 F.3d at 995 (noting an ALJ need not give a treating physician's opinion conclusive weight if it is inconsistent with other evidence in the record and if it is not well-supported by clinical tests).

## D.

Finally, Juszczyk asserts that the hypothetical question posed to the vocational expert "does not include the functional restrictions imposed by plaintiff's non exertional impairments which were affirmatively established by the evidence." The hypothetical question included some non-exertional impairments. The vocational expert was to assume the individual was prohibited from performing any overhead work or doing repetitive reaching, using ladders, scaffolds, working in high unprotected work areas, or driving. The individual would also be able to stoop, kneel, crouch, crawl, or use stairs only occasionally.

Juszczyk neither elaborates on his argument nor specifies the non-exertional impairments purportedly established by the evidence yet not included in the hypothetical question. Our review of the record indicates that Juszczyk may be referring to his own testimony as to his non-exertional impairments. However, contrary to Juszczyk's assertions, evidence of these non-exertional impairments was not firmly established by the record, as the ALJ doubted Juszczyk's credibility. Thus, the ALJ's decision to exclude them from the hypothetical question he relied on is supported by substantial evidence.

Our conclusion is not affected even if Juszczyk is not referring to the hypothetical question's exclusion of non-exertional impairments, but to more serious mental impairments. As explained above, the ALJ's decision to rely on a hypothetical question including Dr. Pulcher's assessment and excluding Dr. Stanley's assessment and Juszczyk's testimony was supported by substantial evidence.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____