# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3191

_____

Robert Ray Baker

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commssioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 14, 2015
Filed: July 22, 2015
[Unpublished]

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

Robert Baker appeals the district court's[1] order upholding the Social Security Commissioner's decision to deny his applications for disability insurance benefits and supplemental security income benefits. Baker argues that the administrative law judge (ALJ) erred by not considering a disability decision by a government agency, by not giving sufficient weight to the opinions of treating medical sources, and by not considering Baker's tinnitus and obesity. We affirm.

## I. *Background*
### A. *Baker's Medical History*

Baker is a 58-year-old male suffering primarily from back pain. Baker served in the military during the 1970s and has worked consistently over the years in sedentary, light, and heavy work.

Baker injured his back on the job on October 30, 2008, lifting heavy flooring panels. Baker visited a medical center on October 31, 2008, to address the back pain. An examination showed that Baker performed negatively on his straight-leg raising test but otherwise had normal gait, normal reflexes, and a full range of motion in his back. The examining physician put Baker on moderate activity restrictions, and Baker underwent a course of physical therapy at the Veterans Administration Medical Center (VAMC). When Baker completed physical therapy several months later, the discharge notes stated that Baker "continues with some pain" but that it was manageable with pain medication and traction stretches.

On November 14, 2008, Baker underwent an x-ray on his back. The x-ray revealed that Baker had mild degenerative disc disease at L2-L3 and L3-L4 with no evidence of acute injury.

---

[1]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

On December 16, 2008, Dale Davis, a Physician's Assistant, examined Baker and noted several uncontrolled conditions. Among other things, Davis recorded that Baker had uncontrolled obesity, uncontrolled degenerative disc disease, and controlled "[h]earing [l]oss w/ intermittent tinnitus." In a follow-up exam on March 11, 2009, Davis noted that Baker's "[s]pine shows no vertebral tenderness."

On April 29, 2009, Dr. Glen Knosp, M.D., a state physician, examined Baker and completed a physical residual functional capacity (RFC) assessment. Baker reported that he had "pain all the time [and] cannot twist, bend or stand without pain." Baker also stated that "he can only walk for 10 minutes, stand for 10 minutes and sit for 15–30 minutes" because of the pain in his lower back. After reviewing Baker's medical history and conducting a physical examination, Dr. Knosp considered Baker to be only partially credible and concluded that the examination did "not support the degree of limitations that [Baker] alleges in terms of walking, standing, [and] sitting." Dr. Knosp instead concluded that Baker could stand or walk for six hours each day and could sit for six hours each day. Dr. Knosp also opined that Baker could occasionally lift 20 lbs. and could frequently lift 10 lbs. Finally, he opined that Baker could frequently climb ramps and stairs, balance, kneel, and crawl and could occasionally stoop and crouch. On July 10, 2009, Dr. Jerry Reed, M.D., also a state physician, reviewed Dr. Knosp's medical opinion and agreed with its conclusions.

On July 9, 2009, Baker underwent an MRI on his spine. The MRI revealed a "mild diffuse disc bulge" at L5-S1 and "moderate facet degenerative changes" at L4-L5 and L5-S1. While the radiologist concluded that Baker had "[m]ild multilevel [degenerative disc disease]," he also found that Baker's "[v]ertebral body height and alignment are normal without subluxation," that there were "[n]o destructive lesions," and that "[p]araspinal soft tissues [were] normal."

On September 9, 2009, Davis completed a RFC questionnaire. Davis stated that Baker's diagnoses included, among other things, "degenerative disc disease [in the]

LS spine, myofascial pain [in the] mid back, meralgia parasthetela [in the] right thigh . . . obesity, [and] hearing loss w/ intermittent tinnitus." Davis reported that Baker could only sit for 30 minutes, stand for 20 minutes, would have to get up and walk every 15 minutes, and could only sit and stand for a total of six hours each day. Davis also reported that Baker could occasionally twist, stoop, crouch, and climb stairs; that he could rarely climb ladders; and that he could occasionally lift 20 lbs.

On November 12, 2010, Baker underwent an audiology exam to test his hearing loss. The exam revealed that Baker had high-frequency hearing loss and required hearing aids. This hearing loss was confirmed in further testing on December 9, 2010.

On January 26, 2011, Dr. Isaac Witkowski, M.D., examined Baker. Dr. Witkowski noted Baker's hearing loss and complaints of tinnitus. Regarding Baker's back, Dr. Witkowski found that Baker's gait was abnormal and that Baker appeared to have "*moderate back pains*." Dr. Witkowski's report specifically states that there was "[n]o testing today. Testing was gathered throughout a review of CPRS."[2] Dr. Witkowski's report also stated that in regard to Baker's disabilities, "[a]ll disabilities are listed as above. No testing was performed." Dr. Witkowski ultimately diagnosed Baker with, among other things, "[m]yofascial [p]ain [s]yndromes," "[d]egeneration of intervertebral discs," and [s]ensorineural [h]earing [l]oss." According to Dr. Witkowski, this affected Baker's mobility, his ability to lift and carry, and his ability to reach. He further opined that Baker "can sit for 30 minutes and stand for 15 minutes and walk about one block." Dr. Witkowski concluded that Baker's back condition was "disabling" because of frequent pain episodes.

On March 2, 2011, the Department for Veterans Affairs (VA) issued a decision that Baker was partially disabled on account of his mild tinnitus, bilateral hearing

---

[2]"CPRS" stands for a "computerized patient record system." *See* Bd. Vet. App. 0822815 (2008).

loss, and various other medical conditions. This decision relied on medical evidence from "Omaha VAMC Records from February 16, 2005 through January 27, 2011," as well as Dr. Witkowski's "VA examination dated January 26, 2011." First, the decision assigned Baker a ten percent disability rating for his tinnitus because "it is at least as likely as not that the tinnitus is related to the claimed military noise exposure." This finding corroborated Baker's later testimony before the ALJ that he developed tinnitus because of all the noise that he experienced as an airplane mechanic for the marines. Next, Baker's claim related to bilateral hearing loss was also granted. In regard to his other medical conditions, the decision found that Baker was disabled "due to the following disability(ies): right foot condition, chronic mechanical low back strain with multilevel degenerative disc disease, diabetes mellitus type II, myofascial pain syndromes, hypertension NOS, [e]rectile dysfunction, myocardial infarction with dyspnea on exertion, dermatitis, meralgia paresthetica. These disabilities combine to 70% disabling."

On March 28, 2011, Dr. Meryl Severson, II, M.D., a state physician, examined Baker. Dr. Severson diagnosed Baker with degenerative disc disease at L5-S1, mild degenerative facets changes in the lumbar spine, and chronic back pain. Dr. Severson also noted that Baker could perform most daily activities with little to no difficulty. Dr. Severson also opined that Baker could sit and stand for 25 minutes at a time and could walk for 15 minute intervals. In total, Dr. Severson concluded that Baker could sit for 175 minutes, stand for 175 minutes, and walk for 60 minutes during a workday. According to Dr. Severson, Baker could lift up to 10 lbs. frequently and could lift up to 20 lbs. occasionally. Finally, Baker could balance, stoop, kneel, crouch, and crawl occasionally; climb stairs and ramps frequently; but could not climb ladders or scaffolds.

On July 14, 2011, Dr. James Bane, M.D., another state physician, examined Baker and completed a physical RFC assessment. Along with the physical examination, Dr. Bane also based his opinion upon a review of Baker's medical

records from 2010–11. Dr. Bane opined that Baker could occasionally lift 20 lbs. and could frequently lift 10 lbs. Dr. Bane also found that Baker could stand or walk for about six hours a day and could also sit for about six hours a day. Dr. Bane further found that Baker could occasionally climb ramps and ladders, balance, stoop, kneel, crouch, and crawl.

In 2012, Baker continued to take pain medication and see physicians. On March 9, 2012, Dr. Christine Mitchell, M.D., examined Baker. Baker told her that his chronic pain was stable but that he continued to use pain medication and muscle relaxers. Later in the year, on September 19, 2012, Baker again enrolled in physical therapy for his back pain. On September 27, 2012, Baker commented that his back pain was temporarily relieved after heat therapy and back traction, but that it soon returned to a high pain level.

## B. *Procedural History*

Baker filed for disability insurance benefits and supplemental security income on March 20, 2009, and alleged a disability onset date of October 30, 2008. His request for benefits was initially denied; upon reconsideration, an ALJ also denied Baker's claim. The ALJ found that Baker was not disabled because he could perform past relevant sedentary work. This finding was based in part on Dr. Severson's medical opinion that Baker could sit for 175 minutes, stand for 175 minutes, and walk for 60 minutes during a workday.

On September 21, 2011, the Social Security Appeals Council remanded Baker's claim back to the ALJ. According to the Appeals Council, the ALJ's order was ambiguous partially because Dr. Severson's opinion on Baker's ability to stand, sit, and walk did not account for a full eight-hour workday.

On remand and after several additional administrative hearings, the ALJ once again found that Baker was not disabled because he could perform past relevant

sedentary work. The ALJ followed the familiar five-step process to determine disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). At Step Two, the ALJ found that Baker "has the following severe impairments: Low back strain; mild degenerative disc disease at L2-3 and L3-4; history of coronary artery disease; diabetes mellitus; *obesity*; and hypertension." (Emphasis added.) The ALJ also noted the severity of Baker's obesity by noting that in 2012, Baker "testified that he was 5 feet, 7½ inches tall and weighed 250 lbs. The record fails to establish that [Baker] has gained or lost substantial weight since then." At Step Three, the ALJ also found that Baker's obesity did not meet the severity of a listed impairment under the relevant regulations.

Pursuant to the Appeals Council's remand, the ALJ further developed the record by seeking clarification from Dr. Severson. Dr. Severson subsequently revisited her medical opinion and amended it to state that Baker could sit for 205 minutes, stand for 205 minutes, and walk for 60 minutes during an eight-hour workday. The ALJ gave great weight to Dr. Severson's opinion because she was an examining medical source and her opinion was congruous with other medical evidence in the record.

Relying on Dr. Severson's amended medical opinion, the ALJ found that Baker had the following RFC:

> He could lift and carry up to 20 pounds on a frequent basis. He could sit for 25 minutes at a time for a total of 205 minutes (3 hours, 25 minutes) in an 8-hour day. He could stand for 25 minutes at a time for a total of 205 minutes (3 hours, 25 minutes) in an 8-hour day. He could walk 1 block at a time, carrying 10 pounds in each hand, for a total of 60 minutes. He could alternate sitting, standing, and walking as needed and complete an 8-hour workday. During the course of a regular day, he could have one break of up to 10 minutes in addition to normal break periods, to go to the bathroom or get a drink.

In addition to Dr. Severson's medical opinion, the ALJ also gave great weight to Dr. Knosp's medical opinion. Conversely, the ALJ gave little weight to Dr. Witkowski's and Davis's opinions. The ALJ gave little weight to Dr. Witkowski's medical opinion because his conclusions "appear to be restatements of the claimant's allegations rather than conclusions reached by Dr. Witkowski based on his own clinical findings." The ALJ gave little weight to Davis's opinion because " Davis is not an acceptable medical source, and his opinion is not supported by other substantial medical evidence of record."

At Step Four, the ALJ found that Baker's RFC allowed him to perform past relevant sedentary work as a wholesale sales representative. Thus, the ALJ concluded that Baker was not disabled and denied his claim for social security benefits. Baker unsuccessfully appealed the ALJ's decision to the Appeals Council and then to the district court.

## II. *Discussion*

On appeal, Baker argues that the ALJ made three errors. First, Baker argues that the ALJ erred by not giving any consideration to the VA's disability determination. Second, Baker argues that the ALJ erred by not giving sufficient weight to the opinions of Dr. Witkowski and Davis. Finally, Baker argues that the ALJ erred by not finding that Baker's tinnitus was a severe impairment and by not considering Baker's obesity.

We apply the same review standard as the district court "and uphold the . . . denial of benefits . . . if the ALJ's decision is supported by substantial evidence in the record as a whole." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008) (alterations in original) (quotation and citation omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.* (quotation and citation omitted). "We must consider evidence that both supports and detracts from the ALJ's decision . . . . If, after reviewing the

record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quotations and citations omitted).

## A. *VA Disability Decision*

Baker first argues that the ALJ committed reversible error by failing to consider or even mention the VA's March 2, 2011 disability decision. Baker argues that our decision in *Morrison v. Apfel* controls. 146 F.3d 625 (8th Cir. 1998). In *Morrison*, the VA had determined that the claimant was "permanently and totally disabled." *Id.* at 628. We held "that the VA finding was important enough to deserve explicit attention. We agree with other courts that findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision." *Id.* (citations omitted). In *Morrison*, we reversed and remanded the case. *Id.* at 629.

Since *Morrison*, we have also considered this issue in *Pelkey v. Barnhart*, 433 F.3d 575 (8th Cir. 2006). Similar to *Morrison*, *Pelkey* dealt with an ALJ's opinion that did not mention a VA decision that found the claimant to be disabled. *Id.* at 579. In *Pelkey*, however, we found that "the ALJ did not err because he fully considered the evidence underlying the VA's final conclusion that Pelkey was . . . disabled." *Id.* In other words, even though the ALJ did not mention the VA disability determination, the ALJ addressed and discredited the various medical records upon which the VA disability determination was ultimately based. *Id.* at 579–80. We expressly distinguished *Morrison* on these grounds. *Id.*

Here, *Pelkey* controls because the ALJ properly considered and discredited the underlying medical evidence upon which the VA decision was based. The VA decision only relied upon a few medical records, including Baker's medical history and Dr. Witkowski's January 26, 2011 medical opinion. The ALJ's decision

considered these sources in his decision. The ALJ walked through several of Baker's medical examinations, physical therapy reports, and other medical findings from x-rays and MRIs going as far back as the alleged date of onset.

Further, the ALJ considered Dr. Witkowski's medical opinion but gave it little weight because he found that Dr. Witkowski's opinion was based upon Baker's subjective complaints as opposed to Dr. Witkowski's clinical findings. Dr. Witkowski's report specifically states that there was "[n]o testing today. Testing was gathered throughout a review of CPRS." In regard to Baker's disabilities, Dr. Witkowski's report stated that "[a]ll disabilities are listed as above. No testing was performed." Thus, the record supports the ALJ's conclusion that Dr. Witkowski's opinion was not based upon his own physical examination of Baker, but rather Baker's own subjective complaints. Accordingly, there appears to be little or no clinical corroboration of Dr. Witkowski's medical opinion that "[i]t is very likely that [Baker's] back pains [would] interfere with all types of employment," or Dr. Witkowski's more specific finding that Baker "can sit for 30 minutes and stand for 15 minutes and walk about one block."

Consequently, the ALJ did not err by discounting the VA decision. The ALJ satisfied *Pelkey* by sufficiently considering the underlying medical evidence—Baker's medical history and Dr. Witkowski's January 26, 2011 opinion— upon which the VA decision relied.

B. *Examining Medical Sources*

Next, Baker argues that the ALJ erred by giving insufficient weight to the examining medical opinion of Davis,[3] and more specifically, his September 9, 2009 RFC questionnaire.

Baker concedes that the opinion of Davis, a Physician's Assistant, cannot be considered as an "acceptable medical source." *See* 20 C.F.R. § 404.1513(a); *see also Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (finding that a social worker, nurse practitioner, and community support service provider could not be considered as a "treating source" under the social security regulations). Therefore, even if Davis had a treating relationship with Baker, Davis's opinion is not subject to receiving "more weight" or "controlling weight" as are medical sources. *See* 20 C.F.R. § 416.927(c)(2). Regardless, Baker rightfully argues that Davis's opinion can still be considered by the ALJ as an "other source." *Id.* § 404.1513(d)(1) (listing physician's assistants as such a source); *see also Lacroix*, 465 F.3d at 886–87. Under this category of "other medical evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (quotation and citation omitted).

Substantial evidence supports the ALJ's discretion to give Davis's opinion little weight because, in the ALJ's words, Davis's "opinion is not supported by other substantial medical evidence of record." Sources in the record, even those of treating physicians, are entitled to less weight when "inconsistent or contrary to the medical evidence as a whole." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quotation and citation omitted). Davis's opinion that Baker could only sit for 30 minutes, stand

---

[3]As has been previously indicated, Baker challenges the weight the ALJ gave to both Dr. Witkowski's and Davis's opinions. Given our disposition of Dr. Witkowski's opinion in section II.A, we only address the weight given to Davis's opinion in this section.

for 20 minutes, would have to get up and walk every 15 minutes, and could only sit and stand for a total of six hours each day is contradicted by the *medical* opinions of Drs. Knosp, Reed, Severson, and Bane. Dr. Knosp opined Baker to be only partially credible and concluded he could stand or walk for six hours and could sit for six hours in a workday. Dr. Reed confirmed this finding after a review of Dr. Knosp's opinion. Dr. Bane also opined that Baker could walk for about six hours and sit for about six hours in a workday. Dr. Severson opined that Baker could stand for 205 minutes, sit for 205 minutes, and walk for 60 minutes in a workday. Thus, we find substantial evidence supports the ALJ's exercise of discretion to give Davis's opinion little weight.

## C. *Baker's Tinnitus and Obesity*

Finally, Baker argues that the ALJ erred by not adequately accounting for his tinnitus and obesity. First, Baker argues that the ALJ should have categorized his tinnitus as a severe impairment at Step Two of the disability analysis. He highlights his audiology exams in late 2010 that revealed he suffered from tinnitus and hearing loss in his right ear. The VA disability decision assigned a ten percent disabling effect on Baker as a result. Thus, Baker contends that by not even mentioning his tinnitus, the ALJ committed reversible error.

Baker's argument is unavailing. At Step Two, a claimant has the burden of providing evidence of functional limitations in support of his contention that he is disabled. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)). Baker testified that he believed he developed tinnitus while serving in the Marine Corps in the 1970s as an airplane mechanic; further, the

VA's disability decision found "that it is at least as likely as not that the tinnitus is related to the claimed military noise exposure." Thus, by Baker's own admission, he has had a steady work history for more than 30 years, all while dealing with his tinnitus. Thus, Baker did not meet his burden at Step Two because he failed to show that his tinnitus significantly limited or had more than a minimal effect on his ability to work.

Baker also argues that the ALJ erred by not considering his obesity and its effects on Baker's ability to perform physical activity within the work environment. The ALJ's decision indicates otherwise. "We have held that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (citing *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004)). In *Heino*, we upheld an ALJ's decision in the face of a similar challenge because the ALJ considered the claimant's obesity by mentioning the claimant's height and weight, stating the heaviest weight the claimant had ever been, and considering obesity in his hypothetical to the vocational expert. *Id.* In the present case, the ALJ also sufficiently considered Baker's obesity in numerous references. The ALJ found that Baker's obesity was a severe impairment under Step Two and noted Baker's height and weight. Also, the ALJ found that Baker's obesity did not qualify as a listed impairment under Step Three. Before reaching Step Four, the ALJ also accounted for Baker's attempts at weight loss throughout his medical history. "Because the ALJ specifically took [Baker]'s obesity into account in his evaluation, we will not reverse that decision." *Id.* at 881–82.

### III. *Conclusion*

For the reasons stated herein, we affirm the Commissioner's denial of benefits.

———————————————

-13-