# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3248

_____

Betty Brown, on behalf of       *
Talvis Williams,       *
      *
         Appellant,       *
      *    Appeal from the United
        v.       *    States District Court for the
      *    Western District of Missouri.
Jo Anne B. Barnhart, Commissioner       *
of Social Security,       *
      *
         Appellee.       *

_____

Submitted: May 14, 2004
Filed: November 18, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Betty Brown applied for supplemental security income benefits (SSI) under the Social Security Act on behalf of her son, Talvis Williams, based on an impairment to his right leg. An administrative law judge (ALJ), after holding a hearing, determined that Talvis was not disabled, and the Social Security Appeals Council denied

Ms. Brown's request for review. The district court[1] upheld the administrative decision, and Ms. Brown appealed. We affirm.

## I.

We review the district court's decision upholding the denial of benefits *de novo*. *See Pettit v. Apfel*, 218 F.3d 901, 902 (8th Cir. 2000). We will affirm the Social Security Commissioner's decision to deny benefits if there are no errors of law and it is supported by substantial evidence in the record as a whole. *See Collins ex. rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

A minor child is considered disabled and thus entitled to SSI if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which has lasted or is expected to last at least a year. 42 U.S.C. § 1382c(a)(3)(C)(i). Where, as here, the child is not gainfully employed, the ALJ must first determine whether the child has a "severe" impairment or combination of impairments. 20 C.F.R. §§ 416.924(a), (b), (c). If so, the child is disabled if the impairments meet or are medically equal to the listed impairments set out in the regulations. *See* 20 C.F.R. §§ 416.924-416.926; 20 C.F.R. Pt. 404, Subpt. P, App.1. Even if the impairments do not come within a listing, benefits are available to a child whose impairments are "functionally equal" to the listed impairments. *See* 20 C.F.R. §§ 416.924(a), (d), 416.926a; *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647-48 (8th Cir. 2004).

According to the record, in 1999, when Talvis was nine years old, he was diagnosed with right foot drop (inability to hold his foot horizontal) indicative of weakness in his lower right leg. One of his doctors described him as shuffling somewhat when walking, and Talvis also developed some atrophy in his right calf

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

muscle. Although his leg sometimes failed him, this improved after he began wearing a foot brace. After testing was performed, Talvis was eventually diagnosed as having an inflammatory neuropathy of the peroneal nerve in his right lower leg. The ALJ determined that Talvis's "right leg peroneal inflammatory neuropathy" was a severe impairment. But the ALJ concluded that Talvis was not disabled because his impairment did not "meet or medically equal or functionally equal" the listed impairments.

## II.

On appeal, Ms. Brown argues that Talvis's impairment met a listing and that the ALJ, in reaching a contrary conclusion, erroneously ignored medical evidence and relied on his own observations. At the hearing, counsel stated that Talvis met listing 112.02 (organic mental disorder), but Ms. Brown acknowledges on appeal that the ALJ properly rejected this assertion. In his decision, the ALJ also concluded generally that Talvis's impairment was not equal in medical significance or severity to any listed impairment, did not result in functional limitations equal to those in any listed impairment, and therefore did not meet and was not medically equal to any listed impairment.

Ms. Brown contends that Talvis's right leg impairment meets the requirements of listing 101.03 as a "[d]eficit of musculoskeletal function due to deformity or musculoskeletal disease" that results in walking that "is markedly reduced in speed or distance despite orthotic or prosthetic devices." "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The Commissioner contends that Talvis's ability to walk is not "markedly reduced in speed or distance" by his impairment and, moreover, that the listings in 101.00 and the sections following address only the musculoskeletal system, and Talvis's impairment is neurological. We note that listing 101.00(B)(1) does state that "[i]mpairments with neurological causes" are to be evaluated instead under 111.00 and the sections following, and

-3-

listing 111.06 for "[m]otor dysfunction (due to any neurological disorder)" requires, *inter alia*, a "deficit" of motor function for "two extremities."

We believe, however, that regardless of what listing comes closest to Talvis's condition, there is substantial evidence to support the ALJ's overall conclusion that Talvis's impairment did not meet or medically equal any listing, including both 101.03 and 111.06. *Cf. Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003). As the ALJ noted, Talvis does not use a cane or any other ambulatory device to assist him with walking. At the hearing, Talvis and his mother testified that he played basketball with his neighborhood friends. Furthermore, on a function report prepared before the hearing, Ms. Brown indicated that Talvis was not limited in his ability to walk and was able to go up and down stairs. As Ms. Brown points out, one of the doctors who evaluated Talvis's medical records for the state (but did not treat or examine him) described his motor development as "markedly limited," but a treating doctor reported that Talvis was "able to keep up fairly well" when he wore his foot brace. Other medical records indicate that he was able to walk on his toes but not on his heels.

Ms. Brown argues that the ALJ improperly relied for his decision on his own observation that Talvis walked "with only a slight gait disturbance" during the hearing and "did not use an ambulatory assistive device." But we do not think that this is a case in which the ALJ placed undue weight on his own observations. *Cf. Kouril v. Bowen*, 912 F.2d 971, 974 (8th Cir. 1990). Before making reference to Talvis's appearance at the hearing, the ALJ set forth extensive evidence in the record (including evidence that we have already recited) to explain his conclusion that Talvis did not have a marked limitation on his ability to move about and manipulate objects, *see* 20 C.F.R. § 416.926a(b)(1)(iv).

### III.

Ms. Brown also argues that the ALJ failed properly to consider Talvis's obesity. No mention was made of obesity in the application for disability or at the hearing, but some of Talvis's medical records describe him as being moderately obese. The ALJ specifically referred to Talvis's obesity in evaluating his claim, and having reviewed the record as a whole we think that he adequately took that condition into account when denying Talvis benefits. *Cf. Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003).

Accordingly, we affirm the judgment of the district court.

_____