# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3138

———————

Rena L. Heino,

        Appellant,

v.

Michael J. Astrue, Commissioner of
Social Security Administration,

        Appellee.

Appeal from the United States
District Court for the
Northern District of Iowa.

———————

Submitted: May 12, 2009
Filed: August 27, 2009

———————

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

———————

SMITH, Circuit Judge.

Rena L. Heino appeals from the district court's[1] affirmance of the administrative law judge's (ALJ) denial of Heino's applications for disability insurance benefits (DIB) and social security income (SSI). Heino raises a number of arguments, each of which we address below. After careful review, we affirm the district court.

———————

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I. *Background*

Rena L. Heino, age 26, applied for DIB and SSI on December 5, 2003. She alleged a disability onset date of March 31, 2002, stating that she could not work because of migraine headaches, obesity, fibromyalgia with severe pain, a torn rotator cuff in her left shoulder, asthma, osteoarthritis in the hips and knees, and knee problems due to her weight and injuries sustained in a motor vehicle accident. When she applied for DIB and SSI, Heino was 5'1" tall and weighed 230 pounds, down from a high of 325 pounds. Her past surgeries included a gastric bypass and knee replacement. She reported that her migraine headaches occurred several times a week and previously required hospitalization for several days. The Social Security Administration (SSA) denied Heino's benefit claims, and Heino filed a request for a hearing before an ALJ.

Following a hearing, the ALJ found that Heino had a history of obesity for which she underwent gastric bypass surgery in 1999. According to the ALJ, Heino lost much weight after the surgery as intended but unfortunately gained it back due to stress at home. The ALJ also noted that Heino suffered from subacromial bursitis and had a dislocated left shoulder from a car wreck in December 1998. Heino had been treated with an acromioplasty in March 1999. In May 2003, she had normal strength in the shoulder, but a few weeks later she had decreased strength and range of motion but no complaint of pain. A magnetic resonance imaging gave no indication of a tear or impingement. In July 2003, Heino received an injection of xylocaine and Depo Medrol for pain with apparently good results.

Heino also injured her left knee in the December 1998 car wreck and reinjured the knee during a subsequent fall. Because the knee showed substantial cartilage degeneration, Heino underwent a full knee replacement in July 2003. Heino recovered well and, by December 2003, was walking "two miles three to four times daily." In March 2006, she had to undergo a surgical knee treatment under anesthesia due to increasing pain.

Additionally, Heino has bronchial asthma that is controlled with inhalers. She also has complained of headaches, including migraines. According to the ALJ's assessment of the medical record, Heino's migraine headaches are infrequent. The medical evidence indicated that Heino has degenerative disc disease in the cervical and lumbar spine. But examining physicians have deemed her muscle strength in her arms and legs, motor strength, and reflexes normal. Heino also has emotional impairments. She has a history of situational depression that was exacerbated by the birth of twins, for whom she is the sole caregiver. She also has a history of post-traumatic stress disorder.

The ALJ noted that Heino's impairments are severe, limiting her to the performance of low stress work, and that she has only "fair ability to handle complex work." But the ALJ nonetheless concluded that "she is only mildly restricted in her activities of daily living" and has "mild difficulties maintaining concentration, persistence and pace."

The ALJ characterized Heino's description of her limitations as follows:

[Heino testified that] she could lift less than 10 pounds and that she could not carry a gallon of milk, which weighs about eight pounds. She indicated that she could walk one or two blocks but that she could not negotiate stairs. She stated that she used a walker and that when shopping would need to sit and rest at least once. She indicated that she could stand for only a couple of minutes and that her knees were not stable. It was her testimony that she could sit for a maximum of 30 minutes and that because of her weight she could not sit comfortably in a chair. She reported that she could bend, stoop and squat to some degree but not when her back went out. She indicated further that she could reach with her left arm, did not have a good enough grip to allow her to open jars and experienced stiffness and soreness in her fingers when typing on a computer. She alleged problems with pushing, pulling and reaching as well.

In her description of her mental capabilities, the claimant testified that she had poor short term memory resulting in difficulty remembering the various tasks that she needed to do. She alleged that her pain caused difficulty with her concentration and that she could not stay focused and complete tasks. She denied any difficulty relating to the people with whom she had contact at work but admitted that she did have arguments with her husband, apparently regarding her children. She has entertained thoughts of harming herself and at times has taken too much medication, allegedly because of her pain. She spoke as well of post traumatic stress disorder related to abuse as a child and to an abandonment disorder as an infant, with anxiety attacks multiple times each week.

Dr. Gary J. Cromer, a medical consultant with the Disability Determination Services of Iowa, found that Heino "could meet the exertional demands of light work." Dr. Cromer found that she "could climb, balance, stoop, kneel and crouch occasionally." He concluded that Heino "could reach only occasionally with her left arm and that she had no other problems with manipulation." He also opined that Heino "did not have any visual, communicative or environment limitations."

Dr. Claro T. Palma treated Heino for pain and completed a residual functional capacity (RFC) assessment on October 21, 2005. Dr. Palma opined that Heino "could walk less than one block at a time" and "could sit for 30 minutes at a time and for a total of about two hours in an eight-hour workday and could stand for 15 minutes at a time and stand/walk for a total of less than two hours in an eight-hour workday." He opined that she "would have to walk about for five minutes every 30 minutes and would need to be allowed to shift positions at will from sitting, standing or walking." He stated that "at times she would need to take unscheduled breaks during the day." He also concluded that "she could lift less than 10 pounds and then only occasionally." "[S]he was significantly limited in repetitive reaching, handling and fingering, could stoop for 10% of an eight-hour day but could not crouch at all."

The ALJ discounted Dr. Palma's conclusion of significant limitations, noting that Dr. Palma's own treatment records did not support his opinions. The ALJ observed that the treatment records indicated that

> as of January 31, 2005, the claimant had normal motion in all joints except for the left hip and both knees and only mild pain. In addition, she did not have any difficulty with normal daily activities except for getting into and out of an automobile, running errands and shopping, which caused problems but which she could still do.

Dr. Raja M. Junaid, a psychiatrist, assessed Heino's RFC. The ALJ characterized Dr. Junaid's conclusions as follows:

> [Heino] would probably be absent from work more than three times a month because of her impairments or treatment and overall, that she had only fair ability to function. More specifically, he felt that she had fair ability to remember work-like procedures, maintain attention for two hours at a time, maintain regular attendance, be punctual, work without special supervision, work in proximity to others without being unduly distracted, accept instructions, respond appropriately to criticism, get along with co-workers, respond appropriately to work changes, deal with normal work stress and be aware of normal hazards and take appropriate precautions. Dr. Junaid indicated further that the claimant had fair ability to do semi-skilled or skilled work if she took her medication. He noted as well that she had fair ability to interact with the general public, adhere to basic standards of neatness and cleanliness and travel in unfamiliar places and good ability to maintain socially appropriate behavior and use public transportation. The most significant limitation indicated by Dr. Junaid is that the claimant is limited in her ability to tolerate stressful work.

The ALJ found that some of Heino's limitations mentioned by Dr. Junaid were not supported by his treatment records. "For example, [Dr. Junaid] opined that [Heino] would be absent from work three or more times a month, but there is no reference in

-5-

his treatment records as to absenteeism of any degree much less to three or more times a month."

Based on the record evidence, the ALJ made the following RFC findings:

[Heino] can lift a maximum of 20 pounds occasionally and a maximum of 10 pounds repeatedly. In a[n] eight-hour workday with normal breaks she can stand/walk and can sit for a total of six hours each. She can bend, stoop, squat, kneel, crawl and climb occasionally. She must avoid work at heights. Although not capable of very complex, technical work, she can do more than simple, routine, repetitive work. She has the capacity for work which does not require constant, close attention to detail. She needs occasional supervision. She can maintain a regular pace at work but cannot tolerate high pressure. With her limitations the claimant is not capable of her past relevant work as a home health aide, nurse aide, telephone solicitor, telephone clerk supervisor, medical secretary or child monitor as a result of the limitations involving stress and complexity of work.

The ALJ then examined the vocational expert (VE), Carma Mitchell, and posed a hypothetical based on Heino's limitations. The VE testified that an individual such as Heino "would be able to transfer the skills that [she] had acquired, including knowledge of clerical systems, communicating to give and receive information, scheduling and maintaining records, to use semi-skilled work as an information clerk . . . appointment clerk . . . and order clerk and service dispatcher."

The ALJ then posed a second hypothetical to the VE that included an additional limitation that Heino would be able to perform "no gross or fine manipulation for periods of time greater than ten to fifteen minutes at a time." To this hypothetical, the VE responded that no jobs existed in the national market that such a claimant could perform.

After discounting Heino's assertions and Dr. Palma's opinions and giving limited weight to the opinion of Dr. Junaid, the ALJ concluded that Heino was not disabled and was "capable of substantial gainful activity in work existing in significant numbers in the region in which she lives and in the national economy." Therefore, the ALJ concluded that Heino was not entitled to DIB or SSI benefits.

The SSA Appeals Council denied Heino's request for review and Heino appealed to the district court. Upon review, the district court found that the ALJ gave sufficient reasons for discounting Heino's credibility. Moreover, the district court reviewed the record and found that the ALJ's reasons for partially rejecting the opinions of Dr. Palma and Dr. Junaid were supported by substantial evidence on the record as whole, adopting the reasons stated in the ALJ's decision. The court stated that "to varying degrees, the doctors' treatment notes do not support their conclusions." The district court then found that the ALJ properly considered Heino's history of obesity in the RFC hypothetical posed to the VE. Lastly, the district court found that the ALJ properly discounted portions of Heino's testimony and the treating physicians' opinions and could therefore exclude that testimony from the hypothetical questions. As a result, the district court affirmed the ALJ's decision.

## II. *Discussion*

Heino first argues that the ALJ failed to give proper weight to the diagnosis of her treating physicians. Second, she argues that the ALJ erred in rejecting her subjective complaints of pain. Third, Heino asserts that the ALJ erred in evaluating the SSA's obesity standards. Finally, she contends that the ALJ posed an improper hypothetical to the VE.

We review de novo the district court's decision to uphold the ALJ's denial of social security benefits. *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). We will affirm the ALJ's decision if it is supported by "substantial evidence on the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).

Substantial evidence is merely such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence on the record as a whole, however, requires a more scrutinizing analysis. In the review of an administrative decision, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Jackson v. Bowen*, 873 F.2d 1111, 1113 (8th Cir. 1989) (internal quotations and citation omitted). We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (internal quotations and citations omitted). The ALJ's decision "is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (internal quotations and citations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

### A. *Treating Physicians*

Heino first argues that the ALJ failed to give proper weight to her treating physicians—Dr. Palma and Dr. Junaid. "In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner*, 499 F.3d at 848 (quoting 20 C.F.R. § 404.1527(b)). The ALJ must resolve conflicts among the various opinions. *Id.* The ALJ may reject these conclusions "if they are inconsistent with the record as a whole." *Id.* (internal quotations and citations omitted). In *Wagner*, we explained how the ALJ must weigh medical opinions:

The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight . . . [the ALJ] consider[s] all of the following

factors in deciding the weight [to] give to any medical opinion": (1) examining relations[;] (2) treating relations; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 404.1527(d). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." *Id*. at § 404.1527(d)(2) (emphasis added).

"[T]he hearing examiner need not adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." *Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998) (internal quotations and citations omitted). Likewise, while a treating physician's opinion is generally entitled to "substantial weight," such an opinion does not "automatically control" because the hearing examiner must evaluate the record as a whole." *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id*. at 1014 (internal quotations and citations omitted).

*Wagner*, 499 F.3d at 848–49 (emphasis added and alterations added in *Wagner*).

Heino asserts that the ALJ improperly discounted the opinions of her treating physicians—Dr. Palma and Dr. Junaid. The government acknowledges that Dr. Palma and Dr. Junaid are treating physicians but responds that substantial evidence on the record as a whole supports the ALJ's decision to discount these opinions.

The ALJ discounted Dr. Palma's opinion that Heino had severe limitations by referencing clinical findings revealed in Dr. Palma's treatment records. Specifically,

the ALJ noted apparent contradictions in the medical record. In early 2005, Dr. Palma stated that Heino had "normal motion in all joints except for the left hip and both knees and only mild pain." This observation reflected improvement in her joint condition since her previous visit. Later that year, Dr. Palma completed a form that indicated that Heino had disabling limitations. But, at that same time, Dr. Palma said that Heino was "[c]apable of low stress jobs," she would "benefit from continuing activity outside the home," and "her obesity [would] not be helped by [her] being sedentary."

Heino argues that the "variable nature of [her] symptoms," as reported by her treating physicians, is a result of fibromyalgia. Although the ALJ found that Heino suffered from "severe fibromyalgia," the ALJ concluded that this impairment was not disabling. The ALJ did give some weight to Dr. Palma's opinions but declined to give controlling weight to his conclusion that Heino suffered under significant physical limitations.

Heino also argues that the ALJ did not grant proper weight to the opinion of Dr. Junaid. Dr. Junaid estimated that Heino "would be absent from work three or more times a month." But the ALJ noted that Dr. Junaid's treatment records do not substantiate the need for some degree of absenteeism. As a result, the ALJ gave Dr. Junaid's opinions "only limited weight."

Moreover, Dr. Cromer stated that Heino "could meet the exertional demands of light work." Dr. Cromer also concluded that Heino "did not have any visual, communicative or environment limitations." Dr. Cromer noted that Heino's husband indicated that Heino "is able to do normal daily activities, drive a car, go shopping, and run errands." Also, Heino is the mother of two children under two years of age, and her husband is limited in his ability to assist her in her child-raising duties. Based on the husband's report and Dr. Cromer's own review of the medical record, Dr. Cromer opined that Heino was not disabled.

Although a treating physician's opinion is generally entitled to substantial weight, that opinion does not "automatically control" in the face of other credible evidence on the record that detracts from that opinion. *Wilson*, 172 F.3d at 542. "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch*, 201 F.3d at 1013–14 (internal quotations and citations omitted). The ALJ here noted the conflicting opinions regarding Heino's ability to perform work activities and chose not to give controlling weight to those of her treating physicians. Substantial evidence on the record as a whole supports that decision.

### B. *Heino's Subjective Allegations*

Heino next argues that the ALJ erred in rejecting her subjective allegations. We disagree.

We first articulated the standard that courts should follow when evaluating subjective complaints in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). In *Polaski*, we stated that the ALJ must consider

> the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.

*Id.* at 1322.

Additionally, we noted that the ALJ "is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective

-11-

complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id.*

The ALJ acknowledged the *Polaski* factors and also considered Heino's testimony. The ALJ then stated in his findings that he "cannot give significant weight to the claimant's assertions." We have held that an ALJ "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). "It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Id.* Here, the ALJ acknowledged the factors, considered the factors in conjunction with Heino's testimony, and then discounted Heino's assertions.

Moreover, the record demonstrates that Heino's actual activities were inconsistent with her allegedly disabling limitations. We have held that "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Because the record contains inconsistencies as to Heino's disability, the ALJ did not err.

Heino is the primary caregiver for her four-year old twin sons who both suffer from neurofibromatosis and chronic lung disease. In 2004, Heino's husband reported that she was able to feed and play with her sons and care for their dog. He also said that she did not need reminders to care for herself or take medicine. She was able to fold laundry, load the dishwasher, and shop for up to an hour a few times each week. In March 2003, Heino requested and received a prescription for Vicodin because her "[b]aby . . . weigh[ed] 19 [pounds] now and . . . is hurting her back to carry him all day." In December 2003, she reported to Dr. J. Matthew Glasscock that she "tries to walk at least three to four times a day, a couple of miles at a time." These activities lend support to the ALJ's finding that Heino's impairments were not disabling. Substantial evidence on the record as a whole supports the ALJ's decision.

## C. *Obesity*

Heino also argues that the ALJ failed to consider her obesity in calculating her RFC. Upon review, we conclude that the ALJ sufficiently reviewed the record and that his decision referenced Heino's obesity. We have held that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal. *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004). In *Brown*, after his benefits were denied, the claimant argued on appeal that the ALJ failed to properly consider his obesity. *Id.* We affirmed the ALJ's denial of benefits because the "ALJ specifically referred to [the claimant's] obesity in evaluating his claim." *Id.*

Here, the ALJ made numerous references on the record to Heino's obesity. The ALJ stated that Heino was "5'1" tall and weighed 230 pounds at the time of the hearing." He also stated that "[a]t one time she had weighed as much as 325 pounds." In his hypothetical to the VE, the ALJ stated that Heino "has a history of obesity." The record indicates that the ALJ considered Heino's obesity when evaluating her claim. Because the ALJ specifically took Heino's obesity into account in his evaluation, we will not reverse that decision.

## D. *Hypothetical*

Finally, Heino argues that the hypothetical posed by the ALJ to the VE improperly excluded her subjective pain allegations. But, we have held that a hypothetical question posed to a VE need not include allegations that the ALJ found not credible. *Pertius v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998). Because we have already determined that the ALJ properly discounted Heino's subjective pain allegations, the ALJ did not err in posing a hypothetical which did not include the previously discredited allegations. *See supra* Part II.B. Therefore, we agree with the district court that substantial evidence on the record supports the ALJ's conclusion that Heino was not disabled.

### III. *Conclusion*

Accordingly, we affirm the decision of the district court.

_____